(No. 19371.

THE ILLINOIS POWER AND LIGHT CORPORATION, Appellant,
vs. ELIZA BARNETT et al. Appellees.

*Opinion filed February 21, 1930—Rehearing denied April 3, 1930.*

TERRY, GUELTIG & POWELL, and DRYER & BROWN, (CHARLES LEROY BROWN, and HERBERT HAASE, of counsel,) for appellant.

WILBUR A. TRARES, for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

This is an appeal from a judgment of the circuit court of Madison county in a condemnation proceeding instituted by appellant, the Illinois Power and Light Corporation, against appellees, Eliza Barnett and others and Jesse A. Grainey and others, to establish an electric transmission line. The original petition did not include damages to land not taken outside of a 66-foot strip, and appellees filed a cross-petition claiming damages to all lands not taken. Evidence was offered as to the value of the various pieces of land and at the close of the evidence the jury viewed the premises. On the Grainey land the verdict was for $5.75 for land taken for towers, $204.50 for the 66-foot strip and $1100 damages to the balance of the land. On the Barnett land the verdict was for $3.90 for land taken for towers, $129.50 for the 66-foot strip and $750 damages to land not taken. Judgment was entered upon the verdict and this appeal was prosecuted.

Appellant makes no complaint as to the amounts allowed for tower sites or for damages to the 66-foot strip, but it insists that all other lands not taken were not damaged within the meaning of the constitution and that the damages allowed to lands not taken were excessive.

The land was in two tracts, one of 160 acres belonging to the Graineys, and the other east of it, consisting of 229 acres, belonging to Eliza Barnett. The purpose of the condemnation was to secure the fee to .05 of an acre on the Grainey tract, on which were to be erected five steel

towers, and to secure the fee to .03 of an acre on the Barnett tract, on which three towers were to be erected. The strip 66 feet wide between the towers consisted of 4.13 acres on the Grainey land and 2.13 acres on the Barnett land, with the right of ingress and egress to maintain the towers and wires. The wires were to carry 66,000 volts of electricity, and constituted a transmission line from a sub-station at Bell siding, near Edwardsville, to a sub-station northeast of Staunton. The land sought to be condemned is on the southeasterly side of the Litchfield and Madison railroad right of way, which crosses both tracts of land in a northeasterly and a southwesterly direction, leaving land both north and south of the right of way. All of the towers will be 66 feet high except the south one on the Grainey land, which will be 86 feet high, and the two north ones on the Barnett land, which will be 71 feet high. The 66-foot towers will be 16 feet square at the base, the 71-foot towers will be 17½ feet square and the 86-foot tower will be 21 feet square. Each of the four legs of the towers will extend into the ground 10 feet and the base of the towers at the extreme ends of the legs will be four feet wider than at the surface. The second tower from the south end on the Grainey land will be about 16 feet southeast from the barn lot and about the same distance from a shed in the barn lot. The shed will be 37 feet from the right of way. The barn to which the shed is attached will be 57 feet and the dwelling will be 237 feet from the right of way. Each tower is to have three cross-arms. The middle one will be 19½ feet long and the lowest one will be 45 feet above the ground. A static wire will be placed at the apex of the towers to protect the line from lightning and it will be grounded. Seven insulators will be attached to the end of each cross-arm. A cable will be attached to the lower end of each line of insulators, and the cables will be at least 20 feet above the ground at the lowest place. All circuits will be equipped with circuit-breakers, which will auto-

matically cut off the current from any wire which may break, become grounded or short-circuited. Evidence was offered by appellant to the effect that the instant a wire touched the ground it will send 40,000 volts into the ground, and this will cause the circuit-breaker to fly open.

The law governing damage to land not taken has been announced by this court on several occasions in cases involving almost identical facts. The burden was upon the owners of the property to prove damage to the land not taken as alleged in their cross-petition, and such damage is the depreciation in the market value of the land. The 66-foot strip was land not taken. To entitle the owners to damage to land not taken they were required to prove that there was some direct physical disturbance of a right, either public or private, which they enjoyed in connection with the property, causing them special damage in excess of that sustained by the public generally. The damage must be direct and proximate and not merely such as is possible or may be conceived by the imagination or such as affects merely the feelings of the property owner. Inconvenience, obstruction or interference in farming the land not taken and shrinkage in area of the farm are elements of damage to land not taken. Testimony as to the amount of damage has no value as evidence where it is not based on proper elements of damage. The jury had no right to take into consideration any damage which is merely speculative or which is remotely contingent. Unsightliness of towers, possibility that at some time a wire or other attachment may fall and cause damage, possible injury from fire or lightning, injury to crops from falling towers or by teams or tractors colliding with towers, or stock or machinery being caught in the towers, are not proper elements of damage. *Illinois Power and Light Corp.* v. *Talbott,* 321 Ill. 538; *Same* v. *Cooper,* 322 id. 11; *Same* v. *Parks,* 322 id. 313; *Same* v. *Peterson,* 322 id. 342; *Same* v. *Lummis,* 323 id. 625; *Illinois Power Co.* v. *Wieland,* 324 id. 411.

The Grainey land is the east half of the southwest quarter and the west half of the southeast quarter of section 31. Extending through the land in a northeasterly and southwesterly direction is the right of way, 100 feet wide, of the Litchfield and Madison railroad. Entering the land near the southeast corner of the east half of the southwest quarter south of the railroad is the Hillsboro hard road, which extends in a northeasterly direction across the west half of the southeast quarter. Hazel road is on the east side of the land, separating it from the Barnett land. The railroad and the hard road divide this farm into three pieces, as follows: North of the railroad there are about 80 acres, south of the railroad and between the railroad and the Hillsboro road there are about 60 acres, and south of the Hillsboro road there are about 20 acres. The farm buildings are just south of the railroad, near the west side of the 60-acre tract in the east half of the southwest quarter. There is a private crossing near the farm buildings over the railroad to the 80 acres north of the railroad.

East of the Grainey land is the Barnett land, consisting of the east half of the southeast quarter of section 31 and the southwest quarter of section 32, less highways and railroads, leaving about 229 acres. The Hazel road is on the west side of the land. The railroad crosses the northwest corner of the land, leaving a triangular piece of about eight acres in the northwest corner. The Hillsboro road enters the land just north of the southwest corner and extends in a northeasterly direction through the land. Near the east side of the east half of the southeast quarter of section 31 a public highway known as the Fruit road branches off of the Hillsboro road and extends in a southeasterly direction across the south part of the southwest quarter of section 32. These public roads and the railroad divide the farm into four parts. There are eight acres in the northwest corner north of the railroad in section 31, 55 acres in sections 31

and 32 between the railroad and the Hillsboro road, 50 to 60 acres south of the Hillsboro road and Fruit road in sections 31 and 32, and 75 to 80 acres south of the Hillsboro road and north of the Fruit road in section 32. The farm buildings are in a triangular strip near the junction of the Hillsboro and the Fruit roads and south of the Hillsboro road.

These various tracts into which these farms are divided are all irregular in shape. This condition existed before the petition was filed. The building of this line does not change the area or shape of any of these tracts, except that it takes a strip 66 feet wide south of and adjacent to the railroad and reduces the area of the two tracts between the railroad and the Hillsboro road to this extent. The eight acres on the Barnett land and the 80 acres on the Grainey land, both of which tracts are north of the railroad, and all of the land on both farms south of the Hillsboro road, were not changed in shape or in acreage, therefore there could be no additional obstructions in farming them. The only damage applicable to these two tracts was the reduced area of the farms considered as a whole, which damage would, of necessity, be slight. The only other land outside of the 66-foot strip which could have been damaged to any apparent extent was the 60 acres on the Grainey farm and the 55 acres on the Barnett farm between the railroad and the Hillsboro road. Neither of these tracts was changed in shape except that the 66-foot strip was cut off. Appellees will have the same access from these two tracts to the lands north of the railroad which they had before the petition was filed. There is a slight reduction in the total area of these two tracts, and there may be some few additional obstructions to farming them, but not such as to justify the amount of the verdict as to land not taken outside of the 66-foot strip. The most of the obstructions to farming are on the 66-foot strip for which compensation was awarded, of which no complaint is made.

Ten or twelve witnesses testified on each side. Witnesses for appellant fixed the value of the Grainey land at from $75 to $115 per acre and the Barnett land at from $90 to $135 per acre. Witnesses for appellees placed the value of the Grainey land at from $125 to $135 per acre and the Barnett land at from $135 to $155 per acre. The witnesses for appellant testified that the 66-foot strip was depreciated fifty per cent of its market value. The witnesses for appellees did not testify to the depreciation of the 66-foot strip but testified to the depreciation of all of the land not taken, placing the damage at from $7 to $20 per acre on the Grainey land and from $8 to $15 per acre on the Barnett land for all of the land in each tract. None of the witnesses for appellees on direct examination testified to any elements of damage to the land outside of the 66-foot strip, but upon cross-examination some of them enumerated elements which they had taken into consideration, some of which appellant claims were improper. Few of these witnesses had any experience in farming land on which towers and transmission lines had been established. In rebuttal appellant offered ten witnesses, all of whom testified that there was no damage to land not taken outside of the 66-foot strip. Some of these witnesses had operated farms over which transmission lines extended, with similar towers.

There were three elements of damage to be considered by the jury. The first was the fair cash market value of the fee to the land on which the towers were to be located. The second was the depreciation in the fair cash market value of the 66-foot strip. Both of these elements were set up in the original petition and the burden was upon appellant to prove them. The third element was the depreciation, if any, of the fair cash market value of all or part of the remainder of the farms outside of the 66-foot strip. This element was set up in the cross-petition of appellees and the burden was upon them to establish this deprecia-

tion. There were certain elements of damage which were applicable to the 66-foot strip which were not applicable to the balance of the land. Inconvenience, obstruction and interference with farming, if any, and shrinkage of the area of the farms, were the elements of damage to the land not taken outside of the 66-foot strip. The 66-foot strip not only included these elements, but it also included the further elements of the perpetual right of appellant of ingress and egress to maintain the lines and the loss of the right to erect buildings on the 66-foot strip which might interfere with the easement of appellant. In arriving at their verdict it was the duty of the jury to determine the value of the land taken for the towers, the depreciation of the 66-foot strip and whether the land outside of the 66-foot strip was or was not damaged. If the balance of the land was damaged it was their duty to determine the amount of the damage. There is no question but that appellees were entitled to compensation for the land occupied by the towers and the depreciation of the 66-foot strip, neither of which is questioned by appellant. The evidence offered by appellees made no distinction between the depreciation of the 66-foot strip and the depreciation of the balance of the land. Appellees apparently offered their evidence on the theory that any damage to land within the 66-foot strip, exclusive of the towers, was a damage to the entire farm, which theory was not correct. Even if the jury had determined that there was no depreciation of the land outside of the 66-foot strip, they could not have made a finding as to the damage to the 66-foot strip under the evidence offered by appellees. These elements of damage should have been separated, and the court was in error in permitting appellees to offer evidence connecting them. This rule was announced in the cases above cited. *Illinois Power and Light Corp.* v. *Parks, supra.*

Some of the witnesses for appellees, over the objections of appellant, without first stating the elements of damage

taken into consideration by them, were permitted to state the amount of the depreciation to land not taken. Upon cross-examination they were asked as to the elements of damage they took into consideration, and they testified to certain elements which were not proper under the decisions of this court. They also testified to elements which were proper as to the 66-foot strip but which were improper as to all land not taken outside of the strip. No motion was made to exclude the evidence of any witness upon the ground that his estimate of damage included improper elements or because there was no basis for the estimate. It has been held that the testimony of a witness as to damage where there is no basis for the damage is of little value as evidence and the testimony should be excluded. The objection to the evidence in chief was sufficient to raise the question of its competency. The evidence as to damage was based upon improper elements, and elements proper as to the 66-foot strip were improperly applied to all of the land.

Complaint is made of the refusal of the court to give two instructions on behalf of appellant and of the giving of all instructions on behalf of appellees. The first instruction refused on behalf of appellant was covered by the twelfth instruction given on its behalf. There was no error in the refusal of the other instructions offered by appellant. The instructions given on behalf of appellees announce correct rules of law, but on account of the errors in the evidence introduced by appellees in the respects above stated they were calculated to mislead the jury.

The judgment is reversed and the cause remanded.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded.*