(No. 37470.—)

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellee, *vs.* WESLEY F. BLOOMER *et al.,* Appellants.

*Opinion filed May 29, 1963.*

Sam S. Pessin, of Belleville, for appellants.

William G. Clark, Attorney General, of Springfield, (Harold G. Andrews and Richard E. Quinn, Special Assistant Attorneys General, of counsel,) for appellee.

Mr. Justice Schaefer delivered the opinion of the court:

The Department of Public Works and Buildings brought this eminent domain proceeding in the circuit court of Madison County to acquire land for the construction of a new highway and for the widening of an existing highway at its intersection with the new one. The defendant owners filed a cross petition for damage to land not taken, and have appealed directly from the judgment fixing their compensation. Ill. Rev. Stat. 1961, chap. 47, par. 12.

The land involved is a tract of 24.96 acres on the outskirts of the city of Alton on which the defendants operate an outdoor drive-in motion picture theater. It is located on the north side of State Route 140, which runs generally east and west at this point. The main body of the tract is roughly square, with a strip, slightly over 100 feet wide

and 528 feet long, extending north from the northeast corner.

The improvement involved the acquisition of strips from the east and south sides of this tract. On the east, 4.64 acres were taken for the establishment of a new freeway, designated as Federal Aid Route 132. This highway traverses the strip extending northerly from the main body of the tract, leaving a small area at the tip which is severed from the remainder. A strip along the southern boundary of the tract, ranging in width from 17 to 46 feet, and containing .55 of an acre, was taken to widen existing State Route 140 at its intersection with the new freeway. The total taken from both sides was 5.19 acres, leaving defendants with 19.77 of the original 24.96 acres. For the land taken, the jury awarded $13,000, and for damage to the remainder $3,500.

As to the value of the land taken, two expert witnesses testified for the petitioners, and one for the defendants. Charles R. McCoy and Maurice F. Wickenhauser, witnesses for the petitioner, valued the land taken at $11,630 and $14,775, respectively. Joseph Wardein, testifying for the landowners, assigned a value of $15,000 to one of the acres taken, as a potential site for a gasoline service station, and fixed the value of the other 4.19 acres at $3,200 per acre or $13,408, to reach a total for the land taken of $28,408. The jury heard this testimony and viewed the premises. The verdict is within the range of the testimony. Under these circumstances, we have repeatedly refused to disturb a verdict in the absence of a clear showing that it was the product of passion or prejudice or was affected by palpable error. *Chicago Land Clearance Com.* v. *Darrow,* 12 Ill.2d 365; *Department of Public Works and Buildings* v. *Pellini,* 7 Ill.2d 367.

The defendants suggest that the jury might have been influenced by the facts that they own several theaters, and are nonresidents of the county. These matters were brought

out on the direct examination of the only defendant who testified, and the record does not indicate that they were emphasized. Similar factors are often present, and few verdicts could stand if they were vulnerable to attack upon unsubstantiated speculation of the kind advanced here. We find no indication of passion or prejudice. *County Board of School Trustees of Du Page County* v. *Boram,* 26 Ill.2d 167.

Turning to the issue of damage to the remainder, it appears that the strips taken did not encroach on the theater proper. The widening of Route 140 on the south brought the highway closer to the theater entrance and increased the grade of the connecting driveways. The taking on the east did not occupy any of the ramp area where automobiles parked to view the screen, although the defendants' employees testified that some twelve of the speaker posts, placed to serve the individual cars, were moved in order to relocate the aisle-driveway on the east side of the theater.

While the condemnor bears the burden of proving the value of the land actually taken, the owner bears the burden of proof in seeking to recover for damage to the remainder. (*Central Illinois Electric & Gas Co.* v. *Scully,* 17 Ill.2d 348; *Central Illinois Public Service Co.* v. *Lee,* 409 Ill. 19.) The settled measure of such recovery is the depreciation in value of the land not taken which results from the taking, that is, the difference between the fair cash market value of the part not taken unaffected by the improvement and its fair cash market value as affected. *Department of Public Works and Buildings* v. *Caldwell,* 301 Ill. 242.

Only one of the defendants' witnesses attempted to testify directly to this issue. Upon the basis of having "been by" the theater before the taking, and having heard the testimony of other witnesses, W. E. Thebus, a real-estate broker and appraiser, stated that "the extent of damage,

that is, the amount of money that a willing buyer would be willing to pay, would be at least $118,570.18." In weighing this ambiguous statement the jury was entitled to take into account that the witness did not state his opinion of the value of the tract before or after the taking and that he did not enumerate or itemize the factors he took into account.

The petitioner's witnesses, on the other hand, testified directly to the issue. The witness Wickenhauser appraised the value of the whole tract before the taking at $122,500, the value of the land taken at $14,775, the value of the remainder after the taking at $105,345, and the reduction in the value of the remainder at $2,380. He testified that the factors causing this reduction were the severance of the small parcel at the end of the northerly strip to which he attributed $580, and the necessity for additional fencing, which reduced the land value by its reasonable cost of $1,800. The witness McCoy fixed the value of the whole before taking at $120,000, the value of the land taken at $11,630, and the reduction in value of the remainder at $4,080, itemized at $2,250 for fencing, $1800 for a driveway, and $30 for moving lights and existing fence. The jury's verdict for damage to the land not taken, in the amount of $3,500, was thus within the range of the evidence.

The defendants assert, however, that the award is inadequate, primarily on the basis of evidence given by the defendant Bloomer and the defendants' employees concerning particular items of expense, disturbance, and inconvenience. The defendants' projectionist testified that mercury vapor streetlights installed at the intersection interfered with his operation, and both he and the defendants' manager testified that headlights from automobiles traveling south on the new highway or turning from the old highway into the new distracted theater patrons, and made it necessary to construct a shielding fence at a cost

of $6,800. Another employee testified that an intersection is an undesirable location for a drive-in theater since the traffic congestion tends to reduce business. Another testified that the noise of diesel trucks stopping and starting at the traffic signal at the new intersection caused trouble. Several witnesses testified that the taking had cut off a portion of the looping driveway used for the storage of automobiles waiting to enter the theater proper, reducing its capacity from approximately 225 cars to about 100. This storage lane could not be lengthened to its original capacity, it was claimed, because the only available area in the tract remaining was occupied by the underground sanitary system and septic tank that served the theater restrooms. A sanitary engineer testified that such a system should not be covered by hard-surfaced paving or compacted earth, and that automobiles passing over a tile system on unpaved driveways would break the tile. The cost of connecting the facilities to the municipal sewer system was estimated to be about $9,000. The construction cost of the existing sanitary system and septic tank was $13,500, according to the testimony.

In contemplation of future expansion, earth had been moved to fill the west side of the theater at a cost of $6,000. This expense was attributed to the taking because expansion to the east on the strip taken would not have required fill. Another $6,000 would be necessary for additional fill to permit expansion, he testified, and such expansion would also require additional fencing at a cost of $6,900. In the event of such expansion, he said, the screen and supporting tower would have to be moved to face the center of the audience area at an estimated cost of $60,000.

Upon this testimony as a base, the defendants' argument assumes that each of these items of cost, expense, or inconvenience is directly and independently recoverable. The argument is not sound. As already stated, the measure of recovery for damage to land not taken is the reduction in

its value resulting from the improvement. Expenditures made and costs incurred in adapting the land to use after the improvement are relevant, if reasonable and economical, as evidence of the depreciation in value, but not as recoverable items in themselves. (*Department of Public Works and Buildings* v. *Caldwell,* 301 Ill. 242, 247; *City of Chicago* v. *Provus,* 415 Ill. 618; *Central Illinois Public Service Co.* v. *Lee,* 409 Ill. 19.) Increased costs of future improvements or expansion may be considered only as they affect fair market value, and "the peculiar value to the owner because of some contemplated improvement by which he hoped to secure an income or profit" is precluded from consideration as a measure. *City of Chicago* v. *Provus,* 415 Ill. 618, 621.

Nor does every factor that brings about a reduction in value represent a recoverable item of damage. An owner has no vested property right in the flow of traffic past his land, and losses produced by the alteration of traffic flow or the installation of traffic control devices confer no right to compensation. (*Department of Public Works and Buildings* v. *Mabee,* 22 Ill.2d 202; *City of Chicago* v. *Jackson,* 196 Ill. 496.) Depreciation suffered in common by all lands in the vicinity of an improvement is not compensable; the claimant must show a direct disturbance peculiar to his property. (*Schuler* v. *Wilson,* 322 Ill. 503; *County Board of School Trustees* v. *Elliott,* 14 Ill.2d 440.) And the disturbance must have the capacity to affect an ordinary use of land, without regard to the sensitivity or delicacy of the particular user. See *Wright* v. *Commonwealth,* 286 Mass. 371, 190 N.E. 593 (1934). Cf. *Amphitheatres, Inc.* v. *Portland Meadows,* 184 Ore. 336, 198 P.2d 847 (1948).

Under these principles, the verdict for damage to the remainder need not correspond directly and arithmetically with the evidence of the defendants' specific expenditures, past or contemplated. The jury's finding is controlled not by such outlays, but by the diminution in the fair market

value of the land remaining, directly caused by the taking and improvement. The award was within the limits of the expert opinion adduced. The verdict is not contrary to the manifest weight of the evidence merely because the jury found the defendants had failed to prove any greater reduction in the value of the land not taken.

The defendants also claim that the trial court erred in admitting evidence of the price paid by the defendants when they acquired the land and theater. Testifying as upon cross-examination under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1961, chap. 110, par. 60), the defendant Bloomer stated that the defendants had begun operating the theater in 1953 under a lease with an option to purchase. The option was partially exercised in 1954, with the purchase of the business and buildings, including the screen, tower, concession building, speakers and equipment, at a price of $110,000. The land itself was acquired sometime later, at a price of $33,000. The condemnation proceeding was begun April 10, 1958.

It does not appear that the defendants were prejudiced by this evidence. Since the whole tract was not taken, the value of the whole was not the ultimate issue to be decided by the jury, but only one item from which the value of the portion taken and the damage to the remainder might be inferred. Any prejudicial effect was therefore necessarily indirect. The defendants were given considerable latitude in their evidence concerning improvements and their efforts to up-grade the operation to a first-run theater. The price paid by the owner may properly be considered in eminent domain proceedings so long as the figure is not misleading because of marked fluctuations in value, changed conditions, and the passage of time since the acquisition. (*Forest Preserve District* v. *Krol,* 12 Ill.2d 139, 147; *Sanitary District of Chicago* v. *Corneau,* 257 Ill. 93; *Forest Preserve District* v. *Hahn,* 341 Ill. 599.) We are of the opinion that the jury was not misled by the evidence here.

Finally, the defendants complain of allegedly prejudicial remarks in the closing argument to the jury made by an attorney for the petitioner. But the argument is not included in the record or in the abstract, and there is nothing before us on which to consider this contention. *Department of Public Works and Buildings* v. *Anastoplo,* 14 Ill.2d 216, 222-23; *McCormick* v. *Kopmann,* 23 Ill. App. 2d 189, 210.

*Judgment affirmed.*