78 Ill. App.2d 284 (1966)
223 N.E.2d 207
The Department of Public Works and Buildings of The State of Illinois, etc., Plaintiff-Appellant,
v.
Albert A. Horejs, et al., Defendants-Appellees.
Gen. No. 50,402.
Illinois Appellate Court  First District, Second Division.
December 13, 1966.
Rehearing denied January 10, 1967.
*285 *286 William G. Clark, Attorney General of the State of Illinois, of Chicago (Von Allan Carlisle, Special Assistant Attorney General, of counsel), for appellant.
Kaplan and Kaplan, of Chicago, for appellees.
MR. JUSTICE BURKE delivered the opinion of the court.
Plaintiff filed a petition to condemn, which included a small triangular piece of vacant land from a corner of defendants' improved residential tract. The property was taken to assist plaintiff to provide drainage on a *287 frontage road superimposed on a preexisting road, fronting defendants' tract. Across the road from defendants' realty, on land acquired by plaintiff from other property owners, plaintiff constructed a portion of the new Southwest Expressway, placing it along the top of an embankment. Defendants claim damages to the remainder, based in material part, on the alleged interference with or obstruction to view, light and air, caused by the embankment. The jury returned a verdict making an award for the taking and for the damages to the remainder upon which the court entered judgment. Plaintiff appeals.
Title to the land taken from defendants was acquired by plaintiff in a statutory proceeding for the immediate vesting of title. The part taken was a triangular sliver of vacant land from the southwest corner of defendants' improved residential tract. The original tract was 20,000 square feet; the part taken was 425 square feet, or slightly over two percent of the total tract; the remainder, improved with a house, garage, shed and driveway, is 19,575 square feet. The purpose of the taking was to assist plaintiff in constructing a new frontage road which, in turn, was to provide defendants and neighboring property owners with access to and from their property. The frontage road would not have been built were it not for the construction of the Southwest Expressway. The expressway was built over and across an area formerly traversed by 71st Street and defendants and others formerly had access to 71st Street. The new frontage road, at defendants' location, occupies the same area as the preexisting 70th Place and from their lot defendants have the same access to the frontage road which they previously had to 70th Place. No part of the expressway was constructed on land taken from defendants.
As part of the expressway general improvement, plaintiff acquired certain other properties across from defendants' lot and across from the road fronting defendants' *288 lot. On these properties plaintiff constructed an embankment and on top of the embankment it placed the Southwest Expressway. The expressway is 18 to 20 feet above the level of the frontage road and defendants' lot. There are about 16 feet between the north end of the "taking line" of defendants' lot to the frontage road. Defendants' house is set back about 50 feet from its frontage. It is about 50 feet from the edge of defendants' property line to a point on the embankment where it begins to rise. The rate of incline is about 1 foot of vertical distance for each 3 feet of horizontal distance. It is about 121 feet from defendants' property line across the frontage road to the edge of the nearest part of the Southwest Expressway pavement. The embankment and plaintiff's vacant property between the frontage road and the embankment are landscaped.
Defendants filed a petition and an amended petition in the nature of a cross-petition alleging damages to the remainder. Pursuant to an order of the court, plaintiff moved to strike the defendants' petition. The court allowed the motion in part, denied it in part and permitted a revision and amendment on the face of the bill. The bill, as amended, particularized damages to the remainder as follows: (3) the establishment of the Southwest Expressway over this property has diminished access and convenience of travel, thus impairing its value therewith, (4) obstruction to view arising out of the abutment built in front of property and along expressway, (5) reducing the square footage remainder for septic tank in the municipality in which the property is located, and (6) obstruction of light and air along the front of property. Plaintiff sought to prevent the admission of value evidence of damage to the remainder allegedly caused by the highway embankment by renewing its motion at the time of the trial and before the calling of witnesses. The motion was not allowed. The range of the evidence as to value and damage to the remainder was as follows:
*289 Value witnesses for Plaintiff:
Mr. Walther: $180 taking; damage to remainder $70;
Mr. Shlaes: $200 taking; damage to remainder $200;
Value witness for Defendants:
Mr. Rathbun: $300 taking; damage to remainder $5,500.
Defendants' appraisal witness, Mr. Horace Rathbun, stated on direct examination, that he took into account in arriving at his opinion as to damage to the remainder, the road, the embankment, the interference with view and with air and light, and the zoning variation which he stated would be needed. Mr. Rathbun testified that he took two factors into consideration in making his judgment as to damages, one the embankment and the other the "zoning code." In answer to the question as to which of these weigh more heavily "in your mind?" he answered, "Well that is a matter of opinion." In responding, on cross-examination, to a question as to whether or not the present view might be an asset, he answered, "It would be very hard to sell that piece of property with an embankment in (and) the variation that we have today. It would have to be a low price seller. I mean it would have to be a low price, a very low price to sell it." At the conclusion of the testimony of defendants' sole value witness, plaintiff moved to strike his testimony, which motion was denied. After all the testimony had been concluded, plaintiff moved to withdraw a juror and declare a mistrial and this motion was denied. Plaintiff tendered corrective instructions on points of law at issue and unsuccessfully objected to certain instructions involving the same points. The jury returned a verdict in the amount of $200 for the taking of the subject property and $2,000 for damage to the remainder and judgment was entered thereon.
[1-5] We agree with plaintiff's contention that damage to the remainder, to be compensable, must be the *290 proximate and direct consequence of the taking and use of claimants' property, that it is improper to admit into evidence as to damage to the remainder, elements of damage not caused by the specific taking, and that it is improper to instruct the jury to consider such elements. The trial court permitted value evidence to be introduced in support of the damages to the remainder not caused by the taking or use of defendants' property. The taking was of a small piece of vacant land off one corner of defendants' residential lot. Defendants claim that the taking requires a variation in the zoning to comply with the septic system requirements. This caused a slight irregularity of the lot. We agree that only damage due to the actual taking was admissible in evidence and that damage which may have flowed from the taking or use of the property acquired from neighboring property owners forms no basis for damage to remainder to these defendants. The "damage to the remainder" must be the direct and proximate consequence of the "taking." In Department of Public Works and Buildings v. Bloomer, 28 Ill.2d 267, 191 NE2d 245, the court, after stating that the burden of proving damage to the remainder is on the owner, said, 270:
"The settled measure of such recovery is the depreciation in value of the land not taken which results from the taking, that is, the difference between the fair cash market value of the part not taken unaffected by the improvement and its fair cash market value as affected." (Emphasis added.)
The court in the Bloomer case also said, 273:
"Depreciation suffered in common by all lands in the vicinity of an improvement is not compensable; .. ."
The damage which defendants may have suffered because of the building of the expressway was suffered in *291 common by all lands in the vicinity. It is differentiated from the damage caused by the taking of defendants' property and, therefore, is damnum absque injuria. Illinois Power & Light Corp. v. Barnett, 338 Ill. 499, 502, 170 NE 717; East St. Louis Light & Power Co. v. Cohen, 333 Ill. 218, 164 NE 182.
The defendants take the position that since the Southwest Expressway and the frontage road were part of the same general project, the taking of defendants' property in connection with the frontage road opened the door for "damages to the remainder" allegedly flowing from the highway embankment. Defendants contend that the taking of their land, its use as part of plaintiff's total construction plan and construction of the expressway, represent one total taking and entitles them to damages suffered by the remainder of their land "and/or damages suffered by abutting the frontage road expressway construction." Defendants urge that the highway construction across the road from the defendants, obstructed and interfered with the light, air and view of the defendants and that this obstruction and interference with defendants' light, air and view represents damage to the remainder which is compensable to them whether examined on a damage to remainder or abutting owner theory. We do not agree with this reasoning, which contravenes the established principle that the actual taking or the use of the part actually taken must be the direct physical cause of the damage to the remainder.
[6, 7] Interference with the easements of air, light and view, are compensable elements in eminent domain proceedings under certain limited circumstances. See Horn v. City of Chicago, 403 Ill. 549, 87 NE2d 642. This may accrue to a property owner, for example, when an obstructive elevated railway is constructed on a public street directly in front of the property owner's abutting property so as to damage his easement of access as well as light, air and view. Aldis v. Union El. R. Co., 203 Ill. 567, *292 68 NE 95. It is interesting to note that when a railroad company constructed its elevated railway on its own right-of-way only 31 feet from claimant's expensive apartment buildings, the latter's claim for damages under the Illinois constitution was disallowed. Aldrich v. Metropolitan West Side El. R. Co., 195 Ill. 456, 461, 63 NE 155. Defendants are not abutting owners to the highway embankment construction, nor was the embankment built on the road which fronts defendants' property; nor was the expressway constructed on or across any part of the property taken from defendants. They have failed to establish any easement to air, light and view. The claimed damage from the expressway embankment was common to all property owners in the area and the law provides them no basis for compensation.
[8, 9] Depreciation suffered in common by all lands in the vicinity of an improvement is not compensable. The claimant must show a direct physical disturbance of a right particular to his property which would have entitled him to recover at common law and neither the inconvenience and feelings of the owner nor the proximity of the public facility to his property are proper elements of damage to land not taken. In Rigney v. City of Chicago, 102 Ill. 64, the court said, 80, 81:
"There are certain injuries which are necessarily incident to the ownership of property in towns or cities which directly impair the value of private property, for which the law does not, and never has, afforded any relief. For instance, the building of a jail, police station, or the like, will generally cause a direct depreciation in the value of neighboring property, yet that is clearly a case of damnum absque injuria. So as to an obstruction in a public street,  if it does not practically affect the use or enjoyment of neighboring property, and thereby impair its value, no action will lie. In all cases, to warrant a *293 recovery it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property ..."
Our view is that whatever damage defendants may have suffered from the expressway embankment obviously was suffered in common by all other property owners in the area. Defendants submitted no evidence to the contrary. Defendants testified as to their inconvenience, their "hemmed in" feeling, their unhappiness with their new view as compared with the old.
[10, 11] In case it is necessary to take private property for public use, the compensation must be fixed and paid before possession can be taken and the improvement made, but where no property is taken the improvement may be made before the damages are ascertained and paid, the property owner in such case being driven to his action at law for damages. Such action, however, is in a nature of a condemnation suit and, when resorted to, the measure of damages and rules of evidence which are to be adopted remain as though a direct proceeding by condemnation had been brought to determine the amount of damages to be paid prior to the making of the improvement. See Aldis v. Union El. R. Co., 203 Ill. 567, 573, 68 NE 95.
It does not appear that the Illinois courts have had occasion to pass specifically on a claim for damages to the remainder based on the construction of a public facility upon the land of others acquired for the same project. This question has been specifically passed on, however, by the United States Supreme Court and by a number of State courts. In Campbell v. United States, 266 U.S. 368, a portion of Campbell's land was acquired by the *294 United States for a nitrate plant project. Properties of other persons in the same area were also acquired. The court said, p 369:
"The question for decision is whether plaintiff was entitled to the damages to the remainder of his estate resulting from the use to be made of the lands acquired from others....
"The damages resulting to the remainder from the taking of a part were separable from those caused by the use to be made of the lands acquired from others. The proposed use of the lands taken from others did not constitute a taking of his property. (P 371.) ...
"It is only because of the taking of a part of his land that be became entitled to any damages resulting to the rest.... If the former private owners had devoted their lands to the identical uses for which they were acquired by the United States or to which they probably will be put, as found by the court, they would not have become liable for the resulting diminution in value of plaintiff's property. The liability of the United States is not greater than would be that of the private users. (Pp 371-372.) ...
"The rule supported by better reason and the weight of authority is that the just compensation assured by the Fifth Amendment to an owner, a part of whose land is taken for public use, does not include the diminution in value of the remainder caused by the acquisition and use of adjoining lands of others for the same undertaking. (P 372.)"
The Illinois decisions are in harmony with the holding of the Campbell case that damage to the remainder must be caused by the actual taking and that damages suffered in common by others in the area are not compensable. In the Campbell case nitrate plant facilities were to be built in part on land of the claimant and in part on land *295 of other property owners. In the case at bar the expressway was built on land of other property owners and a part of claimants' land was taken for another, but auxiliary, purpose. In the Campbell case the damages resulting from the construction of a nitrate plant on the land of others was "separable" from the damages caused by the use of claimant's land for the same general purpose. In the instant case, this "separability" is even more apparent for the taking of defendants' property "damaged" the part not taken by a slight change in the configuration of his remaining land resulting in an alleged necessity for a change in the zoning and the alleged "damage" caused by the embankment constructed on land taken from others was of a different character and effect.
In City of Chicago v. Webb, 102 Ill. App. 232, the court said, 235:
"That a railroad company is not liable in damages to adjacent property owners for the elevation of its tracks upon its own right of way, being its private property, may be deemed settled by the case of Kotz v. Ill Central R.R. Co., 188 Ill. 578. For the same reasons it would appear that the city can not be held liable for requiring such elevation by ordinance."
To paraphrase the court in the Campbell case, the liability of the State of Illinois is not greater than would be that of private users.
Illinois cases permitting damage to the remainder where obstruction interfered with air, light and view, involved situations where the obstruction was built by the condemnor upon land taken from the claimants. Defendants rely on the case of Sanitary Dist. of Chicago v. Baumbach, 270 Ill. 128, 110 NE 331 and of Illinois Cent. R. Co. v. Roskemmer, 264 Ill. 103, 105 NE 695. These cases involved abutment or obstruction to air, light and view. But in each case the obstruction itself was built *296 on land taken from the claimants and a true "damage to the remainder" situation was created.
In these cases the court did not rule, as defendants maintain, that the existence of spoil banks on a parcel belonging to one claimant was an element of damage as to parcels belonging to the other claimant. Each claimant, as to his entire parcel (even where no dwelling existed) could claim damages to his remainder, as residential land, due to spoil bank obstructions created on the land taken from him. It is well established that "esthetic considerations," "personal inconvenience" and "unsightliness of a public facility" are not proper elements of damage. Illinois Power & Light Corp. v. Barnett, 338 Ill. 499, 170 NE 717. In the Barnett case, "unsightliness of transmission towers" was not deemed a proper element to be considered in an opinion of value.
The expert witness for defendants, in arriving at his opinion that the remainder of defendants' land was damaged in the amount of $5,500, based the opinion substantially on interference with air, light and view, caused not by the taking or by the use of the property taken but by the expressway embankment constructed on the property of other parties. He stated that this factor and the factor of the diminution of lot size below the zoning requirement, were the two major factors which entered into his opinion and that he gave weight to both factors. The fact that the jury verdict of $2,000 for damages to the remainder was $1,800 above the highest competent testimony with regard to damages shows that the jury considered and gave great weight to the incompetent testimony. On a retrial proffered testimony as to damage to the remainder caused by the erection of the embankment to the expressway should be excluded and not considered in determining the issue of damage to the remainder.
The part of the judgment for $200 in favor of defendants and against plaintiff as compensation for the land *297 taken is affirmed and the part of the judgment for $2,000 in favor of defendants and against plaintiff for damage to the remainder of the land taken is reversed and the cause remanded for further proceedings not inconsistent with these views.
Judgment affirmed in part and reversed in part and cause remanded with directions.
BRYANT, P.J. and LYONS, J., concur.