**The STATE of Texas et al., Appellants,**

v.

**Joyce WILSON et al., Appellees.**

**No. 413.**

Court of Civil Appeals of Texas.

Tyler.

March 6, 1969.

Rehearing Denied April 3, 1969.

---

Roberts, Smith, Roberts & Parker, Earl Roberts, Jr., Longview, for appellants.

Strong, Allen & Hodge, Claude B. Hodge, Longview, for appellees.

DUNAGAN, Chief Justice.

This is a condemnation case. This appeal is from a judgment of the County Court of Gregg County, Texas. Proceedings were instituted by the State of Texas and the City of Longview as condemnors, against Joyce Wilson and husband, D. R. Wilson, owners of the property, and J. W. Bardwell, the holder of a vendor's lien against the property, as condemnees. The condemnation proceedings were brought to acquire fee simple title to a triangular-shaped tract of land containing 31 square feet from condemnees in connection with the construction of a state highway. The strip taken was off the northeast corner of a lot 150 by 150 feet owned by appellees and which is located in the City of Longview.

Trial was before a jury and verdict was returned awarding condemnees $75.00 for the strip of land condemned and $1,490.00 for damages to the remainder of appellees' land. Judgment of the County Court based on the findings of the jury was entered in the sum of $1,565.00. After a hearing thereon, condemnors' amended motion for new trial was overruled, hence this appeal.

In answer to Special Issue No. 1, the jury found the market value of the condemned land to be $75.00. In answer to Special Issue No. 2, it was found that the remainder of appellees' property had a market value of $14,900.00 immediately before the taking. In answer to Special Issue No. 3, the jury found that the market value of the remaining tract immediately after the taking was $13,410.00.

Condemnors do not complain of the jury's finding as to the value of the strip taken.

By numerous Points of Error, condemnors complain of the legal and factual sufficiency of the evidence to support the "verdict." From their argument under these points, however, we understand the complaint to be directed principally as legal and factual sufficiency of the evidence to support Special Issue No. 3.[1]

The condemnors contend that the damages to the market value of the remainder as shown by the evidence are not compensable because such damages are in common with the community in general and are not peculiar to their property. Therefore, the jury's verdict is not supported by probative evidence.

Condemnees concede that they are not entitled to compensation for damages to the remainder of their property after the severance of the portion taken, if such damages are in common with the community generally. However, they argue that the damages to the market value of the remainder as shown by the evidence are not in common with the community in general and are peculiar to their property.

The measure of damages in a condemnation suit is fixed by the statute of eminent domain. Article 3265, Vernon's Tex.Civ. St.; Texas Electric Service Company v. Campbell, 161 Tex. 77, 336 S.W.2d 742, 746 (1960). This article, in part, provides:

"3. When only a portion of a tract or parcel of a person's real estate is condemned, the commissioners shall estimate the injuries sustained and the benefits received thereby by the owner; whether the remaining portion is increased or diminished in value by reason of such condemnation, and the extent of such increase or diminution and shall assess the damages accordingly.

"4. In estimating either the injuries or benefits, as provided in the preceding article, such injuries or benefits which the owner sustains or receives in common with the community generally and which are not peculiar to him and connected with his ownership, use and enjoyment, of the particular parcel of land, shall not be considered by the commissioners in making their estimate."

■ Article 3265 makes it clear that in a condemnation case where a portion of the land is taken, in arriving at the damages to the remainder of the land, the benefits and injuries which the owner receives and sustains in common with the com-

---

1. SPECIAL ISSUE NO. 3:
    Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by Defendants in common with the community generally and not peculiar to them and connected with their ownership, use and enjoyment of the remainder of their land in question, including the improvements thereon, and taking into consideration the use to which the condemned strip of land is to be subjected, what do you find from a preponderance of the evidence was the reasonable cash market value of the remainder of defendants' land, including the improvements thereon, immediately after the taking of the strip of land condemned for highway purposes? Answer in dollars and cents.
    We, the jury, answer: $13,410.00.

munity generally and not peculiar to that tract should not be taken into consideration. Parker County v. Jackson, 5 Tex.Civ.App. 36, 23 S.W. 924, 926 (1893, n. w. h.); State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 201, 979 (Tex.Com.App., 1936, holding approved). See Rayburn, Texas Law of Condemnation, Sec. 139, p. 423.

The question to be determined by this court is whether there is any evidence, at least sufficient evidence, of damage to the market value of the remainder of condemnees' property, excluding any decrease in such value, that was in common with the community in general and not peculiar to the remaining portion of their property to support the jury's answer to Special Issue No. 3. We have concluded that the answer is no.

Condemnees' property fronts on Doyle Street. The Wilson house located thereon is 43 feet from Doyle Street and approximately 50 feet from the right-of-way line of the highway. It is a brick house consisting of 6–½ rooms.

Immediately prior to the construction of the highway, there was situated to the East of the Wilson property two brick houses and on the other side a frame one, all of which were removed to make way for the highway. Across the street were three frame houses, one partially brick, which were likewise removed. The removal of these houses was not caused by the taking of the small strip off the corner of the Wilson property, but was caused by the taking of the property of other owners by the condemnors in securing right-of-way for the highway. D. R. Wilson testified that "on the same side of our street the third house down is brick and across the street from us the second house down the street is brick and then the fourth house down the street is brick." These houses were not removed.

The condemnees contended in the trial court and so contend in this court that the removal of the brick houses in the vicinity of the Wilson property and the increased flow of traffic caused by the construction of the highway has so changed the characteristics of the neighborhood that the market value of the remainder of the Wilson property has been decreased.

The condemnees called to the witness stand only two value witnesses, B. R. Comer and John Brogdon. Mr. Comer testified that the value of the remainder immediately before the taking was $19,500.50 and immediately after the taking, the value was $12,825.00. Mr. Brogdon's testimony was that the value immediately before the taking was $15,950.00 and immediately after the taking, $11,950.00. Condemnors also offered only two value witnesses, W. A. Locy and Robert Coffey. They testified that the value of the remainder was the same immediately after the taking that it was immediately before the taking.

Condemnees' value witnesses' reason for their opinion that the market value of the remainder after the taking was diminished was that as a result of the houses near the Wilson property being removed to make way for the highway, it had changed the characteristics of the neighborhood and with the increased traffic, it was not as livable a neighborhood as before. The evidence relied upon by condemnees to support the judgment may be illustrated by giving excerpts from the testimony of their value witnesses after they had testified that they were familiar with the values in the locality of the Wilson property. Mr. Comer was asked the following questions, to which he replied as follows:

"Q All right now. Why did you consider that the remainder of the Wilsons' land had been damaged or lessened in value because of the State's taking?

"A Well, the environment that we have out there—they won't have this. I found that they have beautiful trees in all the neighborhood and it is a place of serenity and quiet and tranquillity and it has all of the amenities of good living. I just feel like that when you destroy those or take away the attributes

that contribute to that type of living that it no longer is considered a place suitable to live.

*    *    *    *    *    *

"Q  Mr. Comer, what ways are the Wilson's affected by this taking any more than anybody else on Doyle Street?

"A  Well sir, at that particular point I don't believe there is any other.

*    *    *    *    *    *

"Q  Mr. Roberts asked you numerous questions about the neighborhood Mr. Comer.  I ask you—was the neighborhood better or worse than it is presently before the State's taking?

"A  It was considerably better.

*    *    *    *    *    *

"Q  State whether or not in your opinion the character and quality of the neighborhood has declined since the taking by the State?

"A Yes, sir."

Witness John Brogdon was asked the following questions, to which he replied as follows:

"Q  Now Mr. Brogdon, I ask you whether or not you have arrived at an opinion of the fair market value of the remainder of Mr. and Mrs. Wilson's property after the State had taken this little part.

"A  After the parcel is taken and the street and characteristics of the neighborhood are changed and you put it back on the market I would say that it would bring $11,950.00 at maximum.

*    *    *    *    *    *

"Q  Mr. Brogdon, I notice that you have shown that in your expert opinion the remainder's value after the State's taking is less or indicating that the property has been damaged.  Would you tell the Jury why you believe that the remainder will not bring as much or will not sell for as much after the State's taking?

"A  The main thing because it will not bring as much is that your purchasers or your potential home buyers will not buy due to the traffic flow.

*    *    *    *    *    *

"Q  All right, suppose this is just 6 inches or a foot that is taken off this property down here.  What difference would that make—* * *

"A  As I testified a while ago concerning to the damage to the lot itself if they are taking just a few feet I cannot see that it has affected the lots use and livability of it as far as the small footage is concerned.

*    *    *    *    *    *

"Q  I'm not talking about the value of the part taken but the value of the remainder.

"A  Well I think the characteristics of the neighborhood changing that it would still be the same.

*    *    *    *    *    *

"Q  Well what you are saying or telling the Jury is that it wouldn't make any difference if the right-of-way line had not even touched the Wilson's property that they would still have the same 25% damage to the property?

"A  Right, the characteristics of the neighborhood is changing so that it would definitely do it."

In Pochila v. Calvert, W & B V R Co., 31 Tex.Civ.App. 398, 72 S.W. 255, 256 (1903, n. w. h.) the court said:

"* * * But it is also well settled that general benefits to the property, common to property in the neighborhood generally, caused by the construction of the railroad, cannot be considered in offset in estimating the damage. * * * The benefit caused by the building of the depot affected all property alike in its neighborhood, and was not peculiar to the

plaintiff's property. In order to be *peculiar to a piece of property, the benefit must affect it directly,* so as not to be shared by other property in the neighborhood, and the value of its use must be increased by improvement of the physical condition of the property. (Cases cited.)" (Emphasis added.)

The Pochila case has been cited with approval in Atlantic Pipe Line Co. v. Fields, 256 S.W.2d 940 (Tex.Civ.App., San Antonio, 1953, writ ref., n. r. e.) ; see also City of Waco v. Craven, 54 S.W.2d 883 (Tex.Civ.App., Waco, n. w. h.) ; City of Corsicana v. Marino, 282 S.W.2d 720 (Tex. Civ.App., Waco, 1955, n. w. h.) ; Strickland v. City of Friona, 294 S.W.2d 254, 258 (Tex. Civ.App., 1956, Amarillo, writ ref., n. r. e.) ; Department of Public Works and Buildings of State of Illinois v. Horejs, 78 Ill.App.2d 284, 223 N.E.2d 207 (1966) ; 29A C.J.S. Eminent Domain § 183b, p. 790.

The court in Hall v. Wilbarger County, 37 S.W.2d 1041, 1047 (Tex.Civ.App., Amarillo, 1931, affirmed 55 S.W.2d 797) stated: " * * * Likewise, the injuries resulting from the construction of the road, such as the noise and annoyance of the highway traffic, cannot form the basis for damages because it is common to the community generally."

In the case of State of Texas v. South Main Baptist Church, 361 S.W.2d 898, 901 (Tex.Civ.App., 1962, Houston, writ of error ref., n. r. e.) we find this statement: " * * * Dust, noise and traffic hazards, if any, incident to the use of the Freeway cannot be considered as they are common to all the buildings and homes located near the Freeway. * * *"

■ The above quoted testimony and other testimony of like import was admitted over the condemnors' objection that such damages were not compensable and that it was irrelevant,. immaterial and prejudicial. The condemnors contend on this appeal that the admission of such testimony over their objection was error. In a condemnation suit where a portion of a tract or lot

is taken and testimony is offered showing injuries or benefits to the remainder that the owner sustains or receives in common with the community in general, and which are not peculiar to him, and connected with his ownership, use and enjoyment of the particular parcel of land, such testimony is not admissible. Strickland v. City of Friona, supra; City of Corsicana v. Marino, supra. Even if the testimony was in the record without objection, such incompetent testimony could not be considered in determining sufficiency of evidence because " * * * When the appellate court comes to apply the law to testimony constituting the facts of the case, it can only base its conclusion upon such testimony as is under the law competent. That which is not competent testimony should be given no probative force. The admission of such testimony is no talisman to give effect to that which is irrelevant and incompetent to sustain or deny a material issue in a case." Henry v. Phillips, 105 Tex. 459, 151 S.W. 533 (1912) ; Champion Paper & Fibre Company v. Wooding, 321 S.W.2d 127, 138 (Tex.Civ.App., Waco, 1959, writ ref., n. r. e.) ; Standard v. Texas Pacific Coal & Oil Co., 47 S.W.2d 443, 451 (Tex. Civ.App., Eastland, 1932, writ dism.).

■ We find no testimony that the proximity of the highway to the Wilson property caused or contributed to the alleged decrease in the market value of the remainder of the property. As to the proximity of the highway to the Wilson property, condemnees' two value witnesses, Comer and Brogdon, only testified as to the distance between the house and the highway with Comer stating that it was immaterial. We do not find where either Comer or Brogdon, in estimating the damages to the value of the remainder of the property, used the proximity of the highway right-of-way to the Wilson house as a factor.

When the testimony as to the damages to the remainder, which were in common with the community in general and not

peculiar to the Wilson property, is excluded, that portion of the jury verdict complained of is not supported by any evidence of probative force.

We have not discussed condemnors' points relating to the insufficiency of the evidence to support the jury's finding in answer to Special Issue No. 3, but if the points should be reached, we would hold that the evidence in support thereof is not factually insufficient, nor is the answer to said issue contrary to the overwhelming weight and preponderance of the evidence.

In deciding the "no evidence" points, we have considered only the evidence and the inferences tending to support the findings, and disregarded all evidence and inferences to the contrary. In considering the "insufficient evidence" points. we have considered all the evidence.

Having decided that condemnors' "no evidence" points should be sustained, we now come to the proper disposition of the case. Condemnors' "no evidence" points are not related to (a) motion for instructed verdict; (b) objections to submission to the jury of a vital fact issue; (c) motion for judgment notwithstanding the jury's verdict; or (d) motion to disregard the jury's answer to a vital fact issue, thus we cannot render judgment. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 T.L.R. 361, 362. Since the points were assigned in the amended motion for new trial, they are reserved for review and by sustaining the points, the proper disposition of the case is to remand for a new trial. Rule 434, Texas Rules of Civil Procedure; Rosas v. Shafer, 415 S.W.2d 889 (Tex.1967).

In view of the ruling which we have made in this case, requiring another trial, it is not necessary to discuss the other points of error assigned by condemnors.

The judgment of the trial court is reversed and the cause remanded for further proceedings.