THE DEPARTMENT OF TRANSPORTATION, Petitioner-Appellee, *v.* LAKE KA-HO, INC., *et al.*, Defendants-Appellants.

Fourth District    No. 16927

Opinion filed August 7, 1981.

Ronald C. Mottaz, of Thomas, Mottaz & Eastman, of Alton, for appellants.

Tyrone C. Fahner, Attorney General, of Springfield (Denis A. McGrady, Sr., Special Assistant Attorney General, and Roy E. Frazier, Assistant Attorney General, of counsel), for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

Defendants appeal an award in eminent domain. The sole contention is that the trial court erred in excluding testimony concerning siltation in a lake which is the centerpiece of defendants' property. The overall project was the construction of Interstate Route No. 55 through Macoupin County.

Lake Ka-Ho Subdivision lies in section 34, township 8 north, range 6 west of the third principal meridian, Macoupin County. It is bordered on the south by Township Road 395 which runs east-west and on the east by Fellin Drive, a private roadway for the use of lot owners in the subdivision. The subdivision thus is located in the northwest quadrant of the intersection of TR 395 and Fellin Drive, which forms a T-intersection at its southern end with TR 395.

Lots 1, 2, and 3 of Block 1 of the subdivision lie in this northwest quadrant. Lot 1 is the southernmost and each of the lots on the original plat had approximately 50 feet frontage on Fellin Drive. Each of the lots was approximately 200 feet deep on its east-west axis.

At their western ends each of the lots terminated at the meander line of Lake Ka-Ho, an artificial body of water lying generally in the center of the whole subdivision which contains in excess of 190 lots. At its southerly end Lake Ka-Ho touched the north right-of-way line of TR 395 and formed the west boundary of Lots 1, 2, and 3 of Block 1. According to the restrictions imposed by the subdivider, the lake and all the private roadways are held in trust by named trustees for the benefit of all lot owners in the subdivision.

The design of Interstate Route No. 55 in the general area called for TR 395 to proceed southeasterly from its T-intersection with Fellin Drive and cross I-55 on an overpass to be built approximately 500 to 800 feet southeast of the T-intersection. The overpass approaches were to be on earthen dikes. Also, a frontage road was to be built eastward from Fellin Drive starting approximately 50 feet north of the T-intersection. All of this required the rearrangement of the T-intersection and the raising of the level of TR 395 where it bordered Lot 1 on the south.

To accomplish the construction, plaintiff condemned under its

power of eminent domain (Ill. Rev. Stat. 1979, ch. 47, par. 1 *et seq.*) a strip of land about 20 feet wide off the south end of Lot 1 where it abutted TR 395, another strip about 15 feet wide off the east ends of Lots 1, 2, and 3 where they abutted Fellin Drive, and all of Fellin Drive abutting Lots 1, 2, and 3. The taking, then, was an L-shaped tract containing about 0.30 acres off of the three lots, approximately 200 feet east and west, and 140 feet north and south. No part of the lake was included within this original taking.

The taking of the east-west strip from the south edge of Lot 1 was for the purpose of building a culvert and a spillway and to provide a new slope to the newly elevated TR 395. The drainage was westerly toward the lake.

When the case came on for trial, plaintiff amended its complaint to include a small parcel of land at the west end of the east-west strip along the south edge of Lot 1. This small parcel was 9 feet east-west and 20 feet north-south and apparently took in a portion of the lake.

The construction took about two years and during that time heavy rains were experienced. The earthen dikes upon which the approaches to the overpass were being built eroded badly and the silt from them flowed in a westerly direction into the lake. There was evidence that approximately 1,383 cubic yards, or 4,148,490 pounds of silt had flowed into the affected area. As a result of the siltation the meander line of the lake has retreated and lots 1, 2, and 3 no longer front on it.

At trial defendants sought to prove damages from the siltation but the trial court ruled that such siltation came from property not taken, *i.e.*, the approaches to the overpass about 600 feet to the southeast. It therefore barred any testimony as to siltation except from the area actually taken and defendants obtained no damages on account of it. No questions are raised as to the damages awarded for the actual taking.

Both defendant Lake Ka-Ho, Inc., the owner of Lots 1, 2, and 3 in Block 1, and the individual defendants, as trustees for the lake, filed cross-petitions for damages to land not taken. The record indicates that the purported damage to Lots 1, 2, and 3 is lack of access to the lake by reason of siltation and the damage to the lake is the inability to boat and fish in the affected areas.

The experts testifying in support of these damages stated that their tests were made at a time when the lake was 12 inches below its normal level, apparently because of drought conditions. No testimony was offered by either side as to what the situation was when the lake stood at its normal pool level. It is clear that the silted area contains approximately 3/4 of an acre out of a lake comprising about 20 acres and affects less than 10 lots out of the entire subdivision of more than 190 lots.

■■ Both the constitution of the State of Illinois (Ill. Const. 1970, art. I,

§ 15) and section 1 of the Eminent Domain Act (Ill. Rev. Stat. 1979, ch. 47, par. 1) provide that private property shall not be taken or damaged for public use without just compensation. The test of whether there is a "taking" of property is whether there is an actual physical invasion of the tangible property. *Horn v. City of Chicago* (1949), 403 Ill. 549, 554, 87 N.E.2d 642, 646, *cert. denied* (1950), 338 U.S. 940, 94 L. Ed. 580, 70 S. Ct. 429.

However, the law is clear in Illinois that the damage must be the direct and proximate result of the taking. In *Department of Public Works & Buildings v. Horejs* (1966), 78 Ill. App. 2d 284, 223 N.E.2d 207, the plaintiff took a small portion of defendants' property, and, across a road on property not owned by defendants, constructed a part of the Southwest Expressway in Chicago. Defendants sought damages to their property for dimunition of access, obstruction of view and light and air, and reduction of square footage for a septic tank. In denying such damage, the court said:

> "We agree with plaintiff's contention that damage to the re- mainder, to be compensable, must be the proximate and direct consequence of the taking and use of claimants' property, that it is improper to admit into evidence as to damage to the remainder, elements of damage not caused by the specific taking, and that it is improper to instruct the jury to consider such elements. The trial court permitted value evidence to be introduced in support of the damages to the remainder not caused by the taking or use of defendants' property. The taking was of a small piece of vacant land off one corner of defendants' residential lot. Defendants claim that the taking requires a variation in the zoning to comply with the septic system requirements. This caused a slight irregularity of the lot. We agree that only damage due to the actual taking was admissible in evidence and that damage which may have flowed from the taking or use of property acquired from neighboring property owners forms no basis for damage to remainder to these defendants. The 'damage to the remainder' must be the direct and proximate consequence of the 'taking.' " 78 Ill. App. 2d 284, 289-90, 223 N.E.2d 207, 210.

■■ In the instant case there was no evidence of siltation from the property taken, but on the contrary all of the evidence demonstrated that the silt came from an improvement 500 to 800 feet away on the property of others. The siltation would have occurred without any taking under the record here. Therefore, it could not have been the direct and proximate result of the taking but the result of the construction in the general area. The rule announced in *Department of Public Works & Buildings v. Bloomer* (1963), 28 Ill. 2d 267, 273, 191 N.E.2d 245, 249, is applicable:

"Depreciation suffered in common by all lands in the vicinity of an improvement is not compensable * * *."

Defendants place great reliance on *County of Winnebago v. Kennedy* (1965), 60 Ill. App. 2d 408, 208 N.E.2d 612. In that case the defendants, by cross-petition, sought to enjoin the construction of a culvert by the plaintiff. If completed, the culvert would divert water onto defendants' land. The trial court allowed a motion to strike and the appellate court affirmed. The court noted that diversion of water may be a "taking" or merely "damage" depending on the facts of the case. It then held that insufficient facts were pleaded in the cross petition to warrant the conclusion that a taking was involved.

In the instant case no facts whatever were set forth in the cross petitions, only a bare allegation of "damage." As pointed out above, the evidence showed that the lake was 12 inches below the normal pool level at the time studies were made and no evidence was introduced to indicate what the normal condition would be. Therefore, the language of the *Winnebago* court becomes pertinent:

> "We note that the cross-petition alleges no facts concerning the probable frequency, duration or amount of the water defendant anticipates from the installation of the culvert. The allegations that the culvert would cause 'flooding conditions' does not necessarily imply more than an occasional problem. There are no allegations from which it can be determined whether the flooding will occur after a normal rainfall, or whether, on the other hand, it will occur only after unusually heavy storms. * * * The allegation that the water will prevent the use of the land and buildings by defendant is, again, not necessarily an allegation that the problem is likely to be a frequent or permanent one." 60 Ill. App. 2d 408, 413, 208 N.E.2d 612, 615.

We therefore hold that the siltation was not the direct result of the taking and even if it were, neither the pleadings nor the evidence was sufficient to sustain an award.

We offer no opinion as to any possible alternative remedy available to the defendants against the State of Illinois.

The judgment of the circuit court of Macoupin County is affirmed.

Affirmed.

TRAPP, P. J., and GREEN, J., concur.