THE DEPARTMENT OF TRANSPORTATION, Petitioner-Appellant, *v.*
J. WILBUR GONTERMAN *et al.*, Defendants-Appellees.

Fifth District   No. 75-167

Opinion filed May 18, 1976.—Rehearing denied September 14, 1976.

William J. Scott, Attorney General, of Springfield (Roy E. Frazier, Jr., and Ronald C. Mottaz, Assistant Attorneys General, of counsel), for appellant.

James E. Gorman, of Reed, Armstrong, Gorman and Coffey, of Edwardsville, for appellees.

Mr. PRESIDING JUSTICE KARNS delivered the opinion of the court:

Petitioner brought this action pursuant to articles II and IV of the Illinois Highway Code (Ill. Rev. Stat. 1969, ch. 121, pars. 2—101 to 2—219, 4—101 to 4—510) in the Circuit Court of Madison County to condemn the fee in certain land owned by defendants which was required for the construction of an interchange between Federal Aid Interstate Route 55 and Route 143. Defendants cross-petitioned for damage to land not taken. From judgment entered on a jury verdict for $65,000 for damage to land not taken, petitioner appeals.

Petitioner-appellant, the Department of Transportation of the State of Illinois, condemned two tracts of land owned by the defendants which lay south of Illinois 143 and east and west of Interstate 55. Damage for the taking and damage to defendants' land east of Interstate 55 were determined in a separate proceeding and are not at issue here. In the present trial involving defendants' land west of Interstate 55 the jury determined that the value of the 7.33 acres of land taken was $45,000 and that damage to the remaining 83 acres of land not taken was $65,000. By stipulation, this appeal is limited to the jury's award for damage to the land not taken.

The defendants' land has always been used solely for farming. In its northwest corner, near the intersection of Route 143 and I-55, are two lakes or ponds which contribute to the attractiveness of the surrounding acreage for commercial development. Because of the instant condemnation and construction, the access point to this part of defendants' property was moved westward approximately 600 feet, directly opposite one of the lakes. Commercial utilization of the remaining land would require that an access road be built along the north side of the lakes parallel to Route 143 on the State's right-of-way. The State stipulated prior to trial that it would permit defendants to build such a road. The use of this property as farmland, however, is not in any way impaired by lack of access.

The issues presented on this appeal are whether the trial court erred in admitting testimony concerning the cost of constructing an access road and permitting this cost to be broken down item-by-item; in giving an instruction related to the failure of the petitioner to call appraisal

witnesses, allegedly within its control; and in refusing to grant petitioner a new trial because of defense counsel's allegedly unduly prejudicial tactics in cross-examining petitioner's witnesses and prejudicial final argument.

Other tracts of land surrounding the Interstate 55-Illinois 143 interchange had been developed commercially in the years prior to the instant condemnation. Commercial establishments had been constructed in the other three quadrants of the interchange with defendants' land being the only property yet undeveloped. Testimony at the trial indicated that land with commercial potential had sold for $6,000 per acre three to five years prior to the instant taking and that land values at the intersection had risen annually since that time.

■■ The testimony indicated that at least four acres of the remainder had commercial potential. William Blacklock, called by defendants, stated that the entire tract had commercial potential as a campground; that the fair market value of the land not taken as part of the entire tract for its highest and best use before the taking was $139,000; that the value of the remainder after the taking was $66,500 and that the damage to the remainder was, therefore, $72,500. He stated that after the interchange construction the only use of the property would be as farmland, since the actual cost of building a suitable access road to restore the property's commercial potential would be more than the diminution in value caused by the improvement. This statement was based upon the assumption that such a road would cost $71,000 to construct which together with damage to the land utilized or "destroyed" in constructing an access road would total $91,000. Thomas Thebus, an appraiser, also called by defendants testified that six acres of the remainder had potential for commercial development, that the fair market value of the remainder as part of the entire tract before the taking was $125,536; its value as farmland after the taking was $70,635; and that the damage to the remainder was $54,901. Harry Oller, testifying on behalf of the State, stated the value of the remainder as part of the entire tract before the taking was $69,470; its value after the taking was $56,470; and thus damage to the remainder was $13,000. These opinions of damage to the remainder were generally formulated under the rule of *Department of Public Works & Buildings v. Barton,* 371 Ill. 11, 19 N.E.2d 935 (1939). The jury's award of $65,000 for damage to the remainder was within the range of the evidence. Under these circumstances and since the jury viewed the premises, we will not disturb the verdict in the absence of a clear showing that it was the product of passion or prejudice or was affected by palpable error. (*Department of Public Works & Buildings v. Bloomer,* 28 Ill. 2d 267, 191 N.E.2d 245 (1963); *Housing Authority v. Kosydor,* 17 Ill. 2d 602, 162 N.E.2d 357 (1959).) We find such error in this case.

Petitioner first contends that the trial court erred in permitting

defendants to offer testimony of the cost to rehabilitate the remainder by constructing an access road so that the property might be developed commercially, its highest and best use. William Bunte, a civil engineer and highway consultant, testified to the cost to defendants of constructing an access road around the lakes suitable for the commercial development of the remainder. He stated that based upon current costs the road would cost $94,000, and at the time the petition was filed, the cost would have been $71,000.

■■ Individual items of cost, expense or inconvenience to rehabilitate the remainder for utilization at its highest and best use are competent so long as they are reasonable, economical and not speculative, as these items are then proper evidence of diminution of value suffered by the landowner. (*Department of Public Works v. Bloomer; Department of Public Works & Buildings v. Hubbard* 363 Ill. 99, 1 N.E.2d 383 (1936); *Department of Public Works & Buildings v. Caldwell*, 301 Ill. 242, 133 N.E. 642 (1921).) While the measure of damages to land not taken is the reduction of its market value resulting from the condemnation or improvement, these specific items are admissible as evidence of the depreciation in value though not recoverable as individual items of damage. The cost of curing the damage to the remainder may be the extent of the landowners' loss. (*Department of Public Works v. Bloomer.*) But where these costs and expenses exceed the depreciation in value to land not taken the jury might be confused and misled by such evidence, particularly where these items and the depreciation are both referred to as "damages" to the remainder. We have expressed our disapproval of this kind of evidence where it exceeds any testimony of the diminution in value of the remainder caused by the taking and is used to circumvent the established depreciation in market value rule. (*Department of Transportation v. Galley*, 12 Ill. App. 3d 1072, 299 N.E.2d 810 (5th Dist. 1973).) Nor do we believe that evidence of the cost of constructing a suitable access road is admissible under *City of Chicago v. Callender*, 396 Ill. 371, 71 N.E.2d 643 (1947), or *City of Chicago v. Koff*, 341 Ill. 520, 173 N.E. 666 (1930), as those decisions involved the taking and destruction of buildings and improvements, and were not a departure from this market value rule. See *City of Chicago v. Provus*, 415 Ill. 618, 114 N.E.2d 793 (1953).

Applying these principles to the testimony of Bunte and Blacklock it appears that a large part of the testimony of each was improper. Bunte's testimony would have been proper insofar as it set forth the cost of building an access road for commercial development of the remainder as of the date of the filing of the instant petition if that cost were less than the diminution in value of the remainder caused by the direct taking. But it was here improper since it put before the jury a cost of construction in

excess of the highest competent expert opinion of the diminution in market value of the remainder. While this kind of evidence is material to show that a landowner has in fact been injured to the extent of the depreciation, it must be rejected when it purports to establish the landowner's damage in excess of any competent testimony of damage to the remainder.

We believe a fair reading of Blacklock's testimony, which is somewhat ambiguous and confusing, requires us to find that he based his opinion on the damage to the remainder by the cost of constructing the access road and the value of the land destroyed or used in this construction. In other words his opinion was based on the landowner's cost to rehabilitate the remainder for commercial use without formulating an opinion as to the value of the remainder after the taking absent consideration of the cost of rehabilitation. This was improper as it suggested to the jury a dollar figure which was in excess of any competent evidence of the diminution in the value of the remainder and was the same error we discussed at length in *Galley*. Blacklock's opinion of damages was obtained from the cost estimate of constructing the road developed by an engineer, Bunte, which the latter testified to in great, and improper detail although, we must note, without objection. *Department of Public Works & Buildings v. Hubbard*, 363 Ill. 99, 1 N.E.2d 383 (1936).

■■ Blacklock was allowed to express two opinions of damage to the remainder, first assuming an access were constructed, and then on the assumption it were not constructed. Under the first assumption, he stated the damage to the remainder to be $91,000, the cost of the road and land utilized in the construction of the road. He was then allowed to assume that it was not "economically feasible" to construct an access road. On this assumption, he stated the value of the remainder after the taking was $66,500 and the damage to be $72,500. It is interesting to note that the former figure when added to the assumed approximate cost of the access road totaled $139,000, the value of the remainder as part of the whole before the taking, according to Blacklock. On cross-examination he stated that if the cost estimate to construct the access road were incorrect, then his appraisal was incorrect. In short it is apparent that the witness' opinion as to damage to land not taken was developed entirely from a specific item of expense, the cost of constructing an access road. This was improper. This cost apparently determined, also in his opinion, the highest and best use of the property as either commercial or agricultural. Such damage, that is, damage to land not taken, cannot be either of two figures, and the highest and best use of the remainder cannot be either agricultural or commercial depending on the cost to construct an access road when compared to some unstated valuation of the remainder after

the taking determined without regard to this cost. Such an approach to valuation is incorrect.

■■ On the other hand, Thebus properly formulated and stated his opinion of damage to the remainder as $54,901, less than the cost of rehabilitation. Thebus stated that since the cost to rehabilitate the remainder exceeded its value for a commercial use, he did not consider the remainder as having a commercial potential and did not consider such cost in his computation of damage to the remainder *(City of Chicago v. Callender,* 396 Ill. 371, 71 N.E.2d 643 (1947)); he never stated a dollar figure of the cost of rehabilitation. This was the proper approach. Righeimer, Eminent Domain §5.0634 (2d ed. 1972).

We believe there is merit to the other assignments of error relied upon by appellant. Condemnor's petition did not allege any damage to land not taken resulting from the actual taking. In its case in chief only evidence of the value of the land taken was introduced through appraisal witnesses, and properly so, since the Department did not have the burden of proving damage to land not taken. *(City of Chicago v. Provus,* 415 Ill. 618, 114 N.E.2d 793 (1953); Righeimer, Eminent Domain §85.06 (2d ed. 1972).) The landowners by cross-petition pleaded damage to land not taken. It was their burden to produce evidence of such damage, in which event the Department could introduce evidence of damage to the remainder, if any, in rebuttal. *Department of Public Works & Buildings v. Bloomer.*

■■ Notwithstanding that petitioner employed this well-established procedure, counsel for the landowners persisted in attempts to cross-examine the appraisal witnesses of the petitioner as to whether they were requested to determine damage to land not taken and if so why had they not testified to such damage. Objections to these questions were sustained; however, the questions were simply rephrased and the line of improper questioning resumed. The thrust of this questioning suggested that these witnesses were either incompetent in not appraising the landowners' full damages or were withholding information from the jury. Counsel suggested that he was testing their credibility. Petitioner twice moved for a mistrial, arguing the highly prejudicial effect of this improper examination. On final argument, it was forcefully argued that the Department had withheld relevant evidence from the jury, had been unfair to the landowners and was guilty of deception. A like argument was condemned in *County of Cook v. Vulcan Materials Co.,* 16 Ill. 2d 385, 158 N.E.2d 12 (1959). (See also *Forest Preserve District v. Alton R.R. Co.,* 391 Ill. 230, 62 N.E.2d 701 (1945).) We believe the total effect of these tactics was highly prejudicial to the petitioner as it conveyed to the jury, unintentionally we are sure, the idea that the Department was taking

advantage of the landowner and was less than fair and candid in its trial of the cause. We trust these errors will not be repeated on retrial.

The prejudicial effect of this cross-examination and argument was compounded by the giving of IPI Civil No. 5.01. This instruction provides that if a party fails to produce a witness that the jury may infer that the witness' testimony would be adverse to that party if the jury believed that the witness was not equally available to the other party, that the witness was reasonably within his power to produce, that a reasonable person would have produced the witness if he believed the testimony would be favorable and no reasonable excuse was shown. This instruction further suggested that petitioner was withholding evidence favorable to the landowner from the jury.

We believe this instruction should not have been given. Petitioner did not call two witnesses who had appraised the property in question at its request. Another appraisal witness was not recalled in rebuttal to testify to damage to land not taken. One of these witnesses worked for an appraisal company that was retained by the Department to appraise a number of parcels along Interstate 55 several years prior to the construction of the improvement resulting in the instant litigation. The petitioner's evidence was that the individual in question was no longer with the company and his whereabouts unknown. The other appraisers were residents of the immediate area, but none was an employee of the Department; each was an independent contractor employed on a fee basis. Their names and appraisal reports had been furnished to the landowner. They were expert witnesses available to either party. (*Commissioners of Lincoln Park v. Schmidt*, 395 Ill. 316, 69 N.E.2d 869 (1946).) If an appraiser's report were favorable to the landowner there was no showing that this appraiser was unavailable to testify for the landowner. In fact, one of these appraisers had been subpoenaed by appellee but not called to testify. Appraisers are not the property of either party (*Department of Business & Economic Development v. Shoppe*, 1 Ill. App. 3d 313, 272 N.E.2d 696 (2d Dist. 1971)), and the prior employment of such appraisers is neither relevant nor material. *Department of Public Works & Buildings v. Guerine*, 19 Ill. App. 3d 509 311 N.E.2d 722 (2d Dist. 1974).

Applying the rationale of *Shoppe* and *Guerine*, we feel this instruction particularly inappropriate since the prior employment of an expert appraisal witness is not relevant to the issue of proper valuation. We do not consider such expert witnesses under the control of one of the parties and not equally available to the other party. It is clear that no such showing was made or attempted here. The authorities are reviewed in *Guerine*, and we agree with the observations and conclusions reached there.

In condemnation cases, the property involved is often subjected to

several appraisals, often to establish preliminary valuation on "quick-take" proceedings. (Ill. Rev. Stat. 1975, ch. 47, par. 2.2.) Appraisal reports might be duplicative, or even greatly at variance. A party might disapprove of the conclusions of valuation or the technique employed in arriving at an evaluation opinion. In no event should either party be required to call all appraisers who might be thought to be someway chargeable or attributable to him under risk of the court giving this instruction. We are of the opinion the giving of IPI Civil No. 5.01 was clearly erroneous in this case.

The judgment of the Circuit Court of Madison County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

JONES and G. J. MORAN, JJ., concur.