KENNETH MAZUREK, Plaintiff-Appellant and Cross-Appellee, v. CROSSLEY CONSTRUCTION COMPANY, Defendant-Appellee (Turner Construction Company, Defendant-Appellee and Cross-Appellant).

First District (2nd Division)   No. 1—89—1089

Opinion filed September 24, 1991.

Martin J. Healy, Jr., & Associates and William J. Harte, Ltd., both of Chicago (Martin J. Healy, Jr., William J. Harte, and Joan M. Mannix, of counsel), for appellant.

Keevers & Hittle, of Chicago (Thomas J. Keevers and Paul M. Hummel, of counsel), for appellee Turner Construction Company.

Fischel & Kahn, Ltd., of Chicago (Dan Brusslan, David W. Inlander, and Stephen R. Miller, of counsel), for appellee Crossley Construction Company.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Kenneth Mazurek appeals from the circuit court's declining to set aside a verdict which denied the liability of Crossley Construction Company (Crossley) and Turner Construction Company (Turner) (collectively, defendants) for injuries Mazurek sustained in an acci-

dent at a construction site. Mazurek claims that the verdict was against the manifest weight of the evidence and that he was denied a fair trial by Crossley's: (1) improper opening and closing arguments; (2) implicit suggestion during its questioning of a witness that Mazurek had suborned testimony; (3) failure to prove the existence of a statement with which it had attempted to impeach a witness; (4) attempts to introduce evidence which the trial court had previously ruled inadmissible; and (5) use of information obtained through an *ex parte* communication with Mazurek's physician. Mazurek seeks reversal of the judgment and a remand for a new trial.

Turner cross-appeals from the circuit court's refusal to dismiss Mazurek's suit against it, claiming that pursuant to an agreement between it and Mazurek, Mazurek lost his right to a new trial in his suit against Turner. It seeks reversal of the circuit court's decision and a dismissal of Mazurek's suit against it.

Mazurek's second amended complaint alleged that the defendants caused him to be injured as the result of their wilful violation of section 1 of the Structural Work Act (Ill. Rev. Stat. 1979, ch. 48, par. 60); a second count alleging negligence against Turner is not at issue in this appeal. Further, while Mazurek originally complained about the defendants' actions with regard to both the basement and the first floor of the construction site, the defendants' actions with regard to the basement only are now disputed.

Mazurek testified at trial that he was working as an electrician for Commercial Light Company (Commercial) at the construction site of the Three First National Building, in Chicago, on October 9, 1980, where, at around 10:30 a.m., eight reels of electrical cable arrived at the first floor of the site. Each reel was about 36 to 42 inches in diameter and 2½ to 3 feet wide; six reels contained 500 feet and two contained 1,000 feet of the cable.

Mazurek and another person unloaded the reels from the truck with the aid of a forklift; Mazurek then rolled the reels into a building and toward an elevator. While pivoting the reel to avoid an obstruction, Mazurek pulled a muscle in his back, but thought "nothing of it" and continued working. Although two other employees assisted Mazurek in getting the two reels containing 1,000 feet of cable to the basement, Mazurek began taking the other six reels into the basement when the two other employees broke for lunch because he was concerned about possible theft of the cable. The first five of the six reels were transported to the basement without incident by Mazurek's rolling each of them into an elevator, and once the elevator arrived at the basement, by his rolling them down

a ramp and into an equipment room. He estimated that each of the six reels weighed between 1,200 and 1,500 pounds.

As Mazurek was rolling the sixth and final reel onto the elevator, a Crossley employee arrived with a cart of mortar. The elevator operator told Mazurek to wait while he delivered the Crossley employee to the basement, since delivery of the mortar took priority over the cable. When the elevator returned, Mazurek rolled the reel onto it and went down into the basement. He backed down the ramp, rolling the reel in front of him, and slipped when he was four to five feet down the ramp. He landed on top of the reel, tried to slow it as it rolled down the ramp, but was forced by the reel against a wall. He heard a "snap" in his back, the reel hit his left knee, and he felt "a lot of pain" in his legs and back. When he looked back and up at the ramp, he saw a blotch of mortar with one of his shoe prints in it. After resting for a few minutes, Mazurek put a bar into the reel, twisted it in order to roll the reel, and, turning the wheel with the bar, rolled it into the equipment room.

Panamambur Kini, Mazurek's physician, testified that Mazurek told him on October 13, 1980, that four days earlier he had "moved a lot of cable, felt something pull in the back and since then [had] pain in the left leg." Kini diagnosed him with an "acute lumbar sprain with root compression." Mazurek spent 11 days in the hospital.

Edward Schroeder, an orthopedic surgeon, testified that he examined Mazurek in the hospital on October 15, 1980. Mazurek told him that one week prior to the examination he "had been pushing a heavy roll of wire when he lost control of it and went to redirect it and suddenly twisted his back and then had severe low back pain with pain that radiated down both legs." Mazurek was rehospitalized on December 1, 1980, because of increasing leg and lower back pain. After further testing, Mazurek was diagnosed as having a ruptured disk; he then underwent surgery. Later, in April 1981, Mazurek had arthroscopic surgery on his left knee.

Ben Lichtenstein, a neurologist, examined Mazurek on December 30, 1980, and testified that he related that he "was moving 1,000-foot reels of cable and he had a pain in his low back which radiated down his left lower extremity." In addition, he told Lichtenstein that "he strained his back he injured his left knee when it struck a reel of cable [sic]."

Richard Geline, an orthopedic surgeon, testified that he twice examined Mazurek, who told him that "he was pushing a reel of ca-

ble, during which time he developed onset of low back pain. \*\*\* [H]e continued working. \*\*\* [T]he same day he suffered a twisting injury to left knee."

Several witnesses testified as to the conditions at the accident site. Mazurek testified that although there was usually mortar on the ramp upon which he slipped, he did not notice any on the ramp on the day of his accident until after he fell. Patrick O'Hara, a foreman for Commercial at the time, testified that he went down into the basement about five times daily, and that he observed it on the day Mazurek was injured. He described the basement as "cluttered, sloppy. There was mortar on the ramps, there was mortar on the floor." On the day Mazurek was injured, mortar was mixed on the first floor and brought in tubs down the elevator, down the ramp and into the basement. The tubs were usually filled to the brim when they were transported. O'Hara also observed mortar being spilled as the tubs were removed from the elevator while in the basement.

O'Hara had complained about basement conditions to a union steward and to Turner, the general contractor for the project, primarily about debris which got in the way of persons moving material from one spot to another, "slippery material like mortar, like taping compound, like anything that would be laying on the ground. I complained about tripping hazards, slipping hazards, those type of things." He observed no changes resulting from his complaints, however, and concluded that "[t]he Three First National job was the sloppiest job I have ever been on in my life ever."

O'Hara's testimony about mortar tubs being filled to the top and about mortar being spilled in the basement and on the ramp leading from the elevator to the basement was corroborated by his brother, John O'Hara, who was an electrical superintendent for Commercial at the time of the incident. William Mosher, who ran the elevator for Turner on the day of the accident, testified that mortar was always spilled in the elevator and on the ramp. He would clean mortar from the elevator, but didn't have time to clean the ramp, which "was the laborers' job."

Wilfred Brennan was a union steward for Commercial when Mazurek was hurt. He testified that conditions in the basement were "poor" and that there was "a lot of garbage, building construction debris." He remembered mortar tubs being filled "just about to the top," but did not remember any spillage. He saw no effect from the complaints about conditions which he made to Turner, and in October 1980 he reported the conditions to the Occupational Safety and

Health Administration. That agency inspected the site, and Brennan believed that a citation was issued.

Edward Does testified that he was a mechanical electrical superintendent for Turner at the time of the accident. He described the ramp on which Mazurek slipped as a piece of plywood measuring about four by six feet. He also stated that he "probably" saw mortar spilled on the floor. When it was spilled, the mason using the mortar usually was expected to clean it up. Does stated that keeping the basement clean was a constant problem because of the many workers and materials there.

Thomas Wreglesworth testified that he was a bricklayer foreman for Crossley at the time of the accident. According to him, the tubs used to transport mortar from the first floor to the basement were usually filled from five to six inches from the top, so as to be easier to move. Further, during the time he worked at the site, and despite observing the ramp several times a day, he never saw mortar spilled on it. If mortar was spilled on the ramp, it was cleaned up "right away *** [f]or safety." Finally, he stated that the area around the ramp was "spotless."

The O'Hara brothers testified about the procedures for moving reels of electrical cable. Patrick O'Hara testified that while rolling the type of cable Mazurek rolled is ordinarily safe, it is usually done by more than one person. John O'Hara stated that two men were required for moving one of the 1,000-foot reels, and that the 500-foot reels, weighing about 1,500 pounds, could be rolled by one person; however, it was "unlikely" that one person could maneuver it without getting hurt. In order to turn a reel to roll in a different direction, a pipe needed to be placed in the center core, then used as a lever to turn the reel.

Following the jury's verdict for Crossley and Turner, Mazurek moved to set the verdict aside and to grant a new trial. Turner then moved to dismiss Mazurek's case against it, citing an agreement between itself and Mazurek by which Mazurek, in consideration of $200,000 from Turner, agreed "not to execute any judgment against [Turner] *** concerning the *** matter, above Four Hundred Thousand Dollars ($400,000.00)." Further, the agreement obliged Turner "to pay as additional consideration the amount by which any verdict herein, exceeds Two Hundred Thousand Dollars ($200,000.00), up to the amount of Four Hundred Thousand Dollars ($400,000.00)." Finally, the agreement stated that "Payment herein is non-contingent and will not be effected [*sic*] [both Mazurek and Turner agree this should read 'affected'] by Appeal of any party."

The agreement was typed on Mazurek's counsel's letterhead. The court denied both Mazurek's and Turner's motions.

Mazurek first claims that the jury's verdict was against the manifest weight of the evidence. Crossley and Turner respond that Mazurek waived his right to the review of this issue by failing to raise it in his post-trial motion. Mazurek replies that he implicitly raised the issue by arguing in his brief supporting his post-trial motion that absent prejudicial arguments by Crossley and Turner, the verdict would have been different. In addition, Mazurek points out that Crossley argued in its response to his post-trial motion that Mazurek was not alleging the inadequacy of the evidence and that the trial court's review was limited to the question of whether the jury's verdict was so amply supported by the evidence that its verdict was not affected by any errors. And in his reply brief on his post-trial motion, Mazurek argued that the verdict was contrary to the evidence. However, he cites no discussion of the issue during the hearing on his post-trial motion.

■■ "A party may not urge as error on review of the ruling on his post-trial motion any point, ground, or relief not specified in the motion." (107 Ill. 2d R. 366(b)(2)(iii).) Mazurek's post-trial motion does not specify sufficiency of the evidence as a ground for relief. Moreover, the cases Mazurek cites do not support his theory that "the fact that the issue was raised in Crossley's Response and Plaintiff's Reply served to preserve the issue."

In *Wolter v. Chicago Melrose Park Associates* (1979), 68 Ill. App. 3d 1011, 1016-17, cited by Mazurek, the appellant *had* claimed in his post-trial motion that the verdict was against the manifest weight of the evidence. The court held that the claim was sufficiently specific to have complied with the requirement of section 68.1(2) of the former Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 68.1(2)), now section 2—1202(b) of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—1202(b)), that "The post-trial motion must contain the points relied upon, particularly specifying the grounds in support thereof ***." In the instant case, Turner and Crossley correctly aver that Mazurek failed to raise the issue altogether, not just that it was raised too generally.

Although the court in *Fred Olson Motor Service v. Container Corp. of America* (1980), 81 Ill. App. 3d 825, 831, allowed an appellant to raise the sufficiency of the evidence on appeal despite having failed to raise the issue in his post-trial motion, the "manifest[ ] unfair[ness]" which compelled the decision in that case is not present here. The court noted that the appellant had failed to re-

quest a new trial because the judgment which imposed liability upon it had also required another party to indemnify it. When the indemnification was reversed on appeal, the appellant was then prejudiced by the liability which it had formerly been able to avoid. In addition, the appellant had moved for a directed verdict during the trial, and the court held that, "Where a litigant has argued on appeal that a judgment was against the manifest weight of the evidence without preserving such grounds in a post-trial motion, the appeal will not be summarily dismissed if the issue had been considered at trial." In the instant case, this issue was not considered at trial and Mazurek fails to point to any circumstances that would excuse his failure to raise the issue in his post-trial motion. Accordingly, the issue has been waived.

Mazurek then claims that following Mosher's direct testimony that mortar was always spilled on the ramp, Crossley asked questions in cross-examination which implied that Mosher had been bribed to commit perjury on Mazurek's behalf and that no evidence was adduced in support of this accusation. Specifically, Mazurek points to Mosher's cross-examination testimony that Mazurek's attorney had met with Mosher about a week before he testified, and that Crossley's attorney had come to his home a few days later. The following colloquy then occurred:

"Q. And I remember, and correct me if I'm wrong, you had a chest of drawers and you had a bible sitting on that chest of drawers, didn't you?

A. Oh, yes.

Q. And you had a picture of our Lord on the wall.

A. Yes.

Q. And I asked you if somebody came along, and I'll just use an example, and offered you $1,000 to say there was mortar on a ramp on a given day eight years ago, and you told me, 'I'm a Christian'—

A. I am.

Q. —'If I didn't see it, I wouldn't say it.'

A. Right.

Q. You told me that, didn't you?

A. Yes.

Q. And now you are sitting here telling us you remember seeing mortar on a ramp on October 9, 1980, is that right?

A. There was spillage, yes.

[After asking more questions about whether the spillage was present on the ramp all day, to which Mosher replied in the affirmative, Crossley's counsel asked:]

Q. And didn't you tell me that you didn't see, you didn't have any recollection of the conditions on a certain ramp on a 57-story building.?

A. No, I didn't tell you."

Crossley first responds, relying upon *Friedland v. Allis Chalmers Co.* (1987), 159 Ill. App. 3d 1, that Mazurek waived review of this issue by failing to make a timely objection to the questions, and that he also waived review of the issue by failing to respond to the questions with a motion for mistrial.

After the colloquy set forth above, Mazurek objected to the "foundational aspects of this cross-examination." A sidebar with the judge resulted, during which the parties and the judge discussed this objection, as well as Mazurek's further objection to what "he [Crossley's counsel] has said in front of the jury *** , the Christianity, the $1,000. I don't know what all that means and I don't know what impact that has on the jury." The judge overruled the objections, stating his "hope that the jury hasn't gotten an erroneous impression here."

■■ We hold that Mazurek properly preserved this issue for review. Although his objection to the allegedly prejudicial questions was not made immediately subsequent to their having been asked, *Friedland* does not require such spontaneity. In that case, the appellant was held to have waived review of issues regarding allegedly improper statements when he failed to object during the closing argument in which they occurred. (159 Ill. App. 3d at 5-6, 9.) In fact, that court held:

"[T]he rule generally adopted is that such assignments of error based on alleged prejudicial conduct of opposing counsel will not be considered on appeal unless objection to the alleged prejudicial argument has been made in the trial court, a ruling of the court obtained and the ruling preserved." (159 Ill. App. 3d at 9.)

Mazurek followed the foregoing procedure. In addition, during arguments on Mazurek's motion to disqualify Crossley's counsel from continuing in the case so that he could be questioned as a witness about the alleged discussion with Mosher, Crossley admitted that "counsel objected at the appropriate time." Finally, the failure to respond to impropriety with a motion for a mistrial does not waive

the right to a new trial on that issue. *Bisset v. Village of Lemont* (1983), 119 Ill. App. 3d 863, 866-67.

Even if the issue was not waived, Crossley maintains, the questioning was simply an attempt to use "that particular scenario as an example of the witness' responsibilities to tell the truth." In oral argument on appeal, however, Crossley admitted that its conduct was improper. It is impermissible, without a reasonable basis, to accuse a party of suborning perjury. *Thomas v. Dalpos* (1975), 26 Ill. App. 3d 877, 883.

◼ Next, Mazurek complains that there was prejudicial error in Crossley's failure to prove that Mosher had made a statement prior to and inconsistent with his testimony at trial. At the conclusion of the colloquy described above, Crossley's counsel asked:

"Q. And didn't you tell me that you didn't see, you didn't have any recollection of the conditions on a certain ramp on a 57-story building?

A. No, I didn't tell you.

MR. HEALY [Mazurek's counsel]: Your Honor, I'm going to object to the foundational aspects of this cross-examination.

MR. MILLER [Crossley's counsel]: Your Honor, I took a statement from him. I heard it. I'm entitled to challenge him on it."

Crossley first responds that by objecting to the questioning on the ground of lack of foundation, Mazurek waived review of the issue of its failure to produce the allegedly impeaching statement. We note, however, that during the sidebar following his objection, Mazurek requested the statement allegedly taken from Mosher; Crossley's waiver argument is therefore without merit.

Crossley then argues that even if the issue has not been waived, and even if its counsel's statement was in error, the trial judge cured any error by telling the jury:

"THE COURT: Ladies and gentlemen, just to clear this up a little bit, anything that Mr. Miller may have said in questioning, in examining this witness which might have been construed as testimony from Mr. Miller should be disregarded by you, ladies and gentlemen. The lawyers, of course, do not testify in our cases."

◼ As noted, Crossley does not quarrel with the charge that it acted improperly in arguing that a witness had made a prior inconsistent statement without producing evidence of the existence of that statement. (See *Charpentier v. City of Chicago* (1986), 150 Ill.

App. 3d 988, 997-98; *Bradford v. City of Chicago* (1985), 132 Ill. App. 3d 317, 323-24.) Instead, it maintains that Mazurek was not prejudiced by the impropriety. But we fail to note how the jury, despite the trial court's admonition, could remain unaffected by Crossley's attempt to show that Mosher's testimony was inconsistent with his prior statements to Crossley's counsel. Mosher's credibility could accordingly have been severely impaired, and Mazurek's case correspondingly prejudiced. Courts have found such error to be reversible when it occurs in combination with other prejudicial errors:

> "Plaintiff is entitled to a fair trial, free from prejudicial conduct of counsel, who undertakes to supply facts or make inferences not based upon evidence in the record. [Citations.] Nor do we believe that the prejudice was cured by the trial court's sustaining of objections to defense counsel's testimonial interrogation." (*Charpentier*, 150 Ill. App. 3d at 998.)

In *Charpentier*, a witness was asked by defense counsel during cross-examination whether defense counsel had " 'asked to talk to you about this accident [allegedly resulting from the negligent maintenance of a street], and you told me that you wouldn't talk to me because you were committed to the other side.' " (150 Ill. App. 3d at 997.) The witness denied the statement, and it was never produced. In addition, in response to the witness' statement that he had talked to the defendant's attorney on a particular day, the attorney stated, " 'I don't remember \*\*\*, sir, talking to you at all.' " (150 Ill. App. 3d at 998.) As in the instant case, the attorney's conduct was held to have prejudiced the appellant's right to a fair trial.

Next, Mazurek argues that Crossley deliberately misstated evidence during its closing argument, in violation of an order by the trial court. He notes that the trial judge "instructed [Crossley] not to attempt to confuse the jury that the plaintiff signed or is responsible for the document [an accident report completed by John O'Hara, shortly after being informed of Mazurek's accident]." During closing argument, however, Crossley stated that the report, which failed to mention that mortar was what caused Mazurek to slip, was filled out by Mazurek, and that if he had "slipped on some mortar and went ramming into a wall \*\*\* he would have written something down, but unfortunately it's blank." The court overruled Mazurek's objection to Crossley's statement. Crossley responds that the misstatement had only minimal effect, as it was only trying to convey that if Mazurek had slipped on mortar, he would so have no-

tified O'Hara, and that when Mazurek objected by stating: "Your Honor, I'm going to object. That document was not prepared by this plaintiff, counsel knows that," any prejudice was mitigated. Finally, Crossley points out that the jury had access to the document in question.

■■ "[I]t is improper in closing argument to make reference to matters not in evidence or to comment upon evidence which has been excluded or stricken. *** '[I]t is error sufficient to reverse a judgment to permit counsel to state, against objection, matter not in evidence and pertinent to the issue or to assume arguendo facts to be proven when they are not.' " (*Anderson v. Universal Delta* (1967), 90 Ill. App. 2d 105, 111, quoting *Mattice v. Klawans* (1924), 312 Ill. 299, 309.) In light of Crossley's argument at trial that "the accident report that was filled out by Mr. Mazurek" failed to mention that mortar was the substance on which he slipped, its argument on appeal that it was trying to convey something wholly innocent cannot be taken seriously. Moreover, its reliance upon *Cahill v. Boury* (1986), 144 Ill. App. 3d 413, 416, is off the mark, as there was no evidence in that case that the arguing attorney knew that he was misstating facts, and the opposing counsel's objection was sustained; in the instant case, Crossley directly violated the trial court's instruction "not to attempt to confuse the jury that the plaintiff signed or is responsible for the document." Moreover, the trial court in the instant case overruled Mazurek's objection to the argument, thus compounding its effect.

Accordingly, in light of the serious nature of Crossley's improprieties, and of the closeness of the evidence in the instant case, we hold that the errors could reasonably have affected the outcome of the trial; accordingly, Mazurek is entitled to a reversal of the judgment and a remand for a new trial.

■■ Mazurek raises other errors, including: (1) Crossley's intentional failure to prove a theory which it argued in the course of its opening statement as to how Mazurek's knee was injured; (2) Crossley's allegedly "forcing" Mazurek to object to, and thus to make it appear that he had something to hide concerning, the introduction of a hospital record dictated by Dr. Kini, despite having been told by the trial court not to introduce the document without authority as to its admissibility under an exception to the hearsay rule; (3) Crossley's alleged violation of an order *in limine* that it "not mention, nor attempt to convey to the jury in any manner, *** [w]hether Plaintiff had any injuries or claims prior or subsequent to the occurrence of October 9, 1980, which involved a different part

of the body"; (4) whether the trial court erred in admitting Kini's testimony despite an alleged *ex parte* communication between him and Crossley's attorney; (5) whether Crossley misstated jury instructions during closing argument; (6) whether Crossley's attorney made improper references during closing argument to his personal opinions and feelings; and (7) whether Crossley's counsel improperly read to the jury from unproven transcripts, inaccurately quoted those transcripts and improperly copied those inaccurate quotes on notepads in the presence of the jury. Because Mazurek waived review of some of these issues by his failure to preserve them on appeal, and because we believe that the remaining claims of error did not affect the fairness of Mazurek's trial, we do not deem it necessary, in light of our holding that the errors we have discussed above merit a new trial, to address them in the instant case. This is not to say, however, that we in any manner warrant the propriety of these incidents if they are reenacted at retrial.

■ In its cross-appeal, Turner claims that the agreement between it and Mazurek bound them by the amount awarded Mazurek at the original trial regardless of Mazurek's success on appeal. Turner further argues that the term "any verdict" in the sentence, "Turner *** agrees to pay as additional consideration the amount by which any verdict herein, exceeds $200,000 up to the amount of $400,000.00," is ambiguous, as it could refer to "any verdict" rendered at the original trial or "any verdict" rendered upon any retrial. Turner goes on to contend that because Mazurek's counsel drafted the agreement, the ambiguity should be construed against Mazurek. Mazurek responds that the term "any verdict" is not ambiguous, and that the agreement clearly intended to provide him with a minimum award and to provide Turner with a maximum level of liability; and, further, the agreement does not show an intent to deprive either party of the right to appeal.

> "A contract is ambiguous only if the language used is reasonably or fairly susceptible to having more than one meaning, but it is not ambiguous if a court can discover its meaning simply through knowledge of those facts which give it meaning as gleaned from the general language of the contract." (*Gardner v. Padro* (1987), 164 Ill. App. 3d 449, 453.)

Standing alone, the term "any verdict herein" would leave one to wonder whether the verdict during the first trial or the verdict after any retrial is to be determinative of Turner's liability; however, the remainder of the contract resolves the dilemma. The sentence, "Payment herein is non-contingent and will not be [a]ffected by Ap-

peal of any party" has no meaning if Mazurek's construction of the document prevails.

Under the agreement, Turner promises to pay Mazurek $200,000; if after the retrial resulting from this appeal, Turner is found liable to Mazurek for more than $200,000, it would have to pay, by Mazurek's own admission, up to $200,000 more than it already owes. Therefore, its payment would be "[a]ffected by Appeal of [a] party." On the other hand, if on retrial Turner is found liable for $200,000 or less, it would not be required to pay any more than the $200,000 already owed; thus, a retrial against Turner with such a result would be fruitless. Accordingly, we hold that the trial court erred in denying Turner's motion to dismiss, and its judgment is reversed.

Reversed and remanded.

DiVITO and McCORMICK,* JJ., concur.

*Although Judge McCormick did not participate in the oral argument had in this case, he has read the briefs, audited the tape made at oral argument, and has otherwise participated in the decision-making process.