THE DEPARTMENT OF TRANSPORTATION, Plaintiff-Appellee, v. FIRST BANK OF SCHAUMBURG, as Trustee, Defendant-Appellant.

First District (4th Division)   No. 1—91—2497

Opinion filed November 5, 1992.—Rehearing denied December 7, 1992.

Righeimer, Martin & Cinquino, P.C., of Chicago (Leo N. Cinquino and Celeste P. Cinquino, of counsel), for appellant.

Roland W. Burris, Attorney General, of Springfield (Richard A. Redmond and Robert S. Hirschhorn, Special Assistant Attorneys General, of Chicago, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

To facilitate the widening of Golf Road in the Village of Schaumburg, the Illinois Department of Transportation brought a condemnation action under the State's authority of eminent domain. In order to complete the roadway improvements, the State sought to acquire title to 4,225 square feet of the defendant's property and also requested the imposition of two temporary easements, one along Golf Road and the other along Plum Grove Road. The defendant property owner filed a cross-petition which asserted damage to the remainder of the land not taken in the condemnation action. Both parties presented testimony by expert witnesses as to the appropriate valuation of the subject property, and upon consideration of the evidence presented, the jury returned a verdict of $85,000.

On appeal the property owner raises three principal grounds for reversal. Initially, the property owner asserts that the jury's verdict was not within the range of the evidence. Secondly, the property owner argues that the trial court committed several evidentiary errors in admitting the testimony of Gary DeClark, the State's property valuation expert. Finally, the property owner contends that it was deprived of a fair trial by improper and prejudicial conduct by counsel for the State.[1]

We find that the jury's verdict cannot be sustained on the evidence in the record. Therefore, we reverse the judgment entered on the verdict, and we remand the cause to the circuit court for a new trial.

BACKGROUND

The evidence adduced at trial established that the subject property consisted of a parcel of land located at the southwest corner of Golf and Plum Grove Roads in the Village of Schaumburg. The condemnation proceeding involved the taking of 4,225 square feet along Golf Road as well as the imposition of two temporary, three-year easements, one along Golf Road and the other along Plum Grove Road. The property owner operated a restaurant on the subject parcel which was improved by the restaurant building, a parking lot, and surrounding landscaping. As a result of the acquisition, several parking spaces were eliminated, and the restaurant building and parking lot were no longer in compliance with the setback requirements mandated by the village zoning ordinance.

At trial, the State called Gary DeClark as its sole expert witness on the valuation of the subject property. DeClark testified that the

---

[1] Appellate counsel for the Department of Transportation did not serve as its trial counsel.

value of the parcel taken for the roadway improvements was $55,000; the damage to the remainder was $10,000; and the value of the easements was $9,300. DeClark also testified that there were "costs to cure" of $9,000 and that there was no damage to the remainder as a result of the temporary easements. According to DeClark, the total compensation due the property owner was $83,300.

The property owner called Fred Tadrowski and Gus Zaharias as its two expert witnesses on the valuation of the property. Fred Tadrowski testified that the value of the parcel taken for the roadway improvements was $85,000; the damage to the remainder was $115,000; the value of the easements was $12,000; and the damage to the remainder as a result of the temporary easements was $10,000. According to Tadrowski, the total compensation due the property owner was $222,000.

Gus Zaharias, the property owner's second expert witness, testified that the value of the parcel taken for the roadway improvements was $63,380, and the damage to the remainder was $296,620. Zaharias did not testify as to the value of the temporary easements or as to the damage to the remainder as a result of the easements. According to Zaharias, the total compensation due the property owner was $360,000.

The jury returned a verdict of $60,500 for the property actually taken by the State; $12,500 for the damage to the remainder; $12,000 for the imposition of the temporary easements; and $0 for the damage to the remainder caused by the temporary easements. Thus, the total compensation awarded the property owner by the jury was $85,000.

OPINION

I

The property owner initially asserts that the jury's verdict of $12,500 for damage to the remainder was not within the range of evidence adduced at trial.

■ The verdict of a jury in a condemnation proceeding cannot be sustained where the damages allowed do not fall within the range of the values testified to by the witnesses. (See *Central Illinois Public Service Co. v. Rider* (1957), 12 Ill. 2d 326, 329, 146 N.E.2d 48.) In the instant case the minimum value for damage to the remainder was $10,000, as stated by DeClark, and the maximum value was $296,620, as stated by Zaharias. Based upon this testimony, the jury's verdict of $12,500 was well within the range of the evidence presented by the expert witnesses.

The property owner contends, however, that the minimum value

on this element of damage should properly have been $19,000, and consequently, the jury's verdict of $12,500 was not within the range of the evidence. In presenting this claim, the property owner urges that the minimum value stated by DeClark must include his valuation of the damage to the remainder ($10,000) plus his valuation of the "costs to cure" ($9,000). Thus, the property owner argues that these two values should be combined into an aggregate number which would then represent the minimum value for this element of damage. We find that this argument is without merit.

■ The relevant inquiry presented here is whether the jury's verdict was within the range of the competent and properly admissible evidence. The measure of damages to the remainder is the difference between its fair market value before the acquisition and its fair market value after the acquisition. (*Department of Public Works & Buildings v. Bloomer* (1963), 28 Ill. 2d 267, 272-73, 191 N.E.2d 245; *Department of Transportation v. Schlechte* (1981), 94 Ill. App. 3d 187, 190, 418 N.E.2d 1000.) Thus, the recovery for damage to land not taken is the reduction in its value resulting from the acquisition. *Bloomer*, 28 Ill. 2d at 272-73.

■ Expenditures made and costs incurred in adapting the land to use after the acquisition are relevant, if reasonable and economical, as evidence of the depreciation in value, but not as recoverable items in themselves. (*Bloomer*, 28 Ill. 2d at 273; *Department of Transportation v. Gonterman* (1976), 41 Ill. App. 3d 62, 65, 354 N.E.2d 76.) Consequently, an expert valuation witness may consider expenses made necessary by reason of the acquisition to adjust the property to the changed conditions brought about by the taking. (*City of Freeport v. Fullerton Lumber Co.* (1981), 98 Ill. App. 3d 218, 223, 423 N.E.2d 924.) Yet, such costs cannot be recovered specifically and are not the measure of damages. (*City of Freeport*, 98 Ill. App. 3d at 223; *Department of Transportation v. Galley* (1973), 12 Ill. App. 3d 1072, 1078, 299 N.E.2d 810.) The cost of rehabilitation may be considered only in determining a reduction of the market value of the whole. (*City of Freeport*, 98 Ill. App. 3d at 223; *Galley*, 12 Ill. App. 3d at 1078.) In such situations, an expert valuation witness may be permitted to state the factors considered in forming an opinion of the value of the remainder, including the costs of rehabilitation, but may not testify as to the specific figures applied for those costs. *Galley*, 12 Ill. App. 3d at 1078.

■ Thus, DeClark's valuation of the "costs to cure" was not admissible as a separate element of damage and should have been incorporated in his opinion of the damage to the remainder.

Nonetheless, we must reject the property owner's claim that De-

Clark's estimate of the "costs to cure" should be simply added to his valuation of the damage to the remainder. We find that the property owner has cited no authority which would support a request for such relief or which can be considered precedent for this approach.

Moreover, merely adding the improper evidence of "costs to cure" to the estimate of damage to the remainder would compound rather than cure the evidentiary error which occurred at the trial level. This approach would sanction the admission of improper evidence and would create an artificial number which may not accurately represent the proper minimum value for this element of damage.

■ Because the jury's award of $12,500 for damage to the remainder was within the range of the properly admissible testimony by the expert witnesses, the verdict will not be reversed on this basis.

We also find that the jury's determination that no compensation should be paid for damage to the remainder caused by the temporary easements was within the range of the evidence. The minimum value for this element of damage was $0, as stated by DeClark, and the maximum value was $10,000, as stated by Tadrowski.

## II

The property owner next contends that the jury was influenced by several portions of DeClark's testimony which were improper and should have been excluded.

### A. DeCLARK'S VALUATION OF THE PROPERTY TAKEN VIOLATED THE UNIT RULE

In fixing the value of the land taken for the roadway improvements (4,225 square feet), DeClark testified that he assigned a value of $12 per square foot, based upon sales of comparable parcels in the vicinity of the subject property. DeClark testified that he then added to that figure the value of the improvements (asphalt, lawn, curbing, and lights), which he estimated at $5,000, stating that "[i]t has been recognized that that is the contributory value of those improvements." According to DeClark, the fair cash market value of the property acquired was $55,000.

■ The unit rule requires that the value of improved property be considered as a whole, without assignment of separate costs for the land and individual improvements. (*City of Chicago v. Anthony* (1990), 136 Ill. 2d 169, 176, 554 N.E.2d 1381; *Department of Transportation v. Quincy Coach House, Inc.* (1976), 64 Ill. 2d 350, 363, 356 N.E.2d 13; *Department of Public Works & Buildings v. Lotta* (1963), 27 Ill. 2d 455, 456-57, 189 N.E.2d 238.) The fair cash market value of improved property is *not* the sum of its component parts, *i.e.*, the land and

improvements valued separately. (*Lotta,* 27 Ill. 2d at 456; *Schlechte,* 94 Ill. App. 3d at 190.) To avoid misleading and confusing the jury, the evidence should be confined to the value directly at issue, which is the value of the improved property as a whole. (*Lotta,* 27 Ill. 2d at 457.) Accordingly, it is improper to cross-examine a witness regarding the separate values of land and improvements, and the admission of specific figures for these components constitutes palpable and reversible error. *Schlechte,* 94 Ill. App. 3d at 191; *Gonterman,* 41 Ill. App. 3d at 64-65.

In the case at bar, DeClark testified that he had assigned a value of $12 per square foot for the parcel taken in the condemnation and then added to that figure the value of the improvements (asphalt, lawn, curbing, and lights), which he estimated at $5,000. This procedure was clearly improper because a jury could easily conclude that these items should be directly and independently recoverable. (*Schlechte,* 94 Ill. App. 3d at 191.) This approach is also improper because it would allow a jury to conclude that the market value of the property is the sum of the different values stated by the witnesses, and the jury may fail to consider various other factors, such as the real estate market in the area of the property. *Quincy Coach House,* 64 Ill. 2d at 363.

Although DeClark used the words "contributory value," there is no indication that he actually valued the land as a whole or considered the improvements only to the extent that they enhanced the value of the entire parcel. (See *Central Illinois Public Service Co. v. Gibbel* (1978), 65 Ill. App. 3d 890, 894, 382 N.E.2d 846.) This valuation technique was improper, and DeClark's testimony should have been stricken. (*Lotta,* 27 Ill. 2d at 457; *Department of Transportation v. Association of Franciscan Fathers* (1981), 93 Ill. App. 3d 1141, 1151, 418 N.E.2d 36.) Because DeClark's testimony as to the value of the parcel taken violated the unit rule, the admission of that evidence constitutes reversible error.

## B. DeCLARK'S OPINION OF THE VALUE OF THE REMAINDER AND THE DAMAGES THERETO SHOULD HAVE BEEN STRICKEN

In support of this argument, the property owner points out that DeClark arrived at his determination of the value of the remainder by subtracting the value of the property taken from the value of the entire parcel. As noted above, DeClark's opinion of the value of the property taken was based upon inadmissible evidence which was violative of the unit rule. (*Schlechte,* 94 Ill. App. 3d at 191; *Gonterman,* 41 Ill. App. 3d at 64-65.) Thus, DeClark's determination

of the value of the remainder was affected by his consideration of improper factors and cannot be sustained.

In addition, the property owner urges that DeClark's assessment of the damage to the remainder was improper. The measure of damages to the remainder is the difference between the fair market value of the remainder immediately before the taking and the fair market value of the remainder immediately after the taking. (*Bloomer*, 28 Ill. 2d at 272-73; *Schlechte*, 94 Ill. App. 3d at 190.) DeClark's opinion of the damage to the remainder must also fail where his opinion of the value of the remainder resulted from his consideration of improper evidence in assessing the value of the property taken.

## C. DeCLARK'S OPINION OF THE DAMAGE TO THE REMAINDER IMPROPERLY INCLUDED "COSTS TO CURE" AS A SEPARATE ELEMENT OF COMPENSATION

■ As previously stated, the measure of damages to the remainder is the difference between its fair market value before the acquisition and its fair market value after the acquisition. (*Bloomer*, 28 Ill. 2d at 272-73; *Schlechte*, 94 Ill. App. 3d at 190.) Expenditures made and costs incurred in adapting the land to use after the acquisition may be relevant to the depreciation in value of the property, but they are not recoverable items in themselves. (*Bloomer*, 28 Ill. 2d at 273; *Gonterman*, 41 Ill. App. 3d at 65.) An expert valuation witness may be permitted to state the factors considered in forming an opinion of the value of the remainder, including the costs of rehabilitation, but may not testify as to the specific figures applied for those costs. *Galley*, 12 Ill. App. 3d at 1078.

DeClark's valuation of "costs to cure" as a separate element of damage was manifestly improper. DeClark should have considered this factor in forming an opinion of the damage to the remainder without specific reference to the actual costs of rehabilitating the remainder of the property. DeClark's testimony on this element of damage should have been stricken, and the admission of this evidence was erroneous.

## D. DeCLARK DID NOT PROPERLY VALUE THE LAND WITHIN THE TEMPORARY EASEMENTS

■ The property owner next asserts that DeClark failed to properly value the land within the area of the temporary easements because he did not compare the value of that land before and after the imposition of the easements. The measure of damages to the part of land upon which an easement is impressed is the depreciation in fair market value thereof caused by its subjection to the condemnor's

superior right to use the land. *Lake County Forest Preserve District v. Frecska* (1980), 85 Ill. App. 3d 610, 616, 407 N.E.2d 137.

■ The record reveals that DeClark did not testify as to the value of the land within the area of the temporary easements before and after the imposition of the easements. Rather, DeClark stated that he had assigned the estimated land value of $12 per square foot, then multiplied that figure by an estimated return of 10%, and finally multiplied that figure by three because the easements were impressed for a period of three years. DeClark testified on cross-examination that the "unit value" of the land within the easement area remained unchanged after the imposition of the easements. This testimony indicates that DeClark did not assess the value of the land within the area of the easements in accordance with the established rule of law in condemnation proceedings. Instead, DeClark's opinion of the damages resulting from the temporary easements was based upon a formula which he devised and which amounted to a three-year rental of the land taken for the temporary easements. This evidence was improper and should have been stricken.

The record reveals, however, that the jury's verdict on the value of the land within the area of the temporary easements was $12,000, which was the value stated by Tadrowski, one of the expert witnesses called by the property owner. Consequently, we cannot say that DeClark's improper testimony misled the jury or resulted in a verdict which was manifestly against the weight of the evidence. See *Forest Preserve District v. Kercher* (1946), 394 Ill. 11, 24, 66 N.E.2d 873.

E. PLAINTIFF NEVER PRESENTED PROPER EVIDENCE TO SUPPORT DeCLARK'S OPINION THAT THERE WAS A REASONABLE PROBABILITY OF REZONING

The property owner contends that the jury should not have considered DeClark's testimony as to the value of the remainder and damage thereto because it was predicated upon his opinion that (1) the highest and best use of the property remained a restaurant after the acquisition, and (2) it was unlikely that the Village of Schaumburg would enforce the existing zoning ordinance which mandated a 28-foot building setback and a 10-foot parking setback.

●12 The reasonable probability of rezoning is a proper factor to be considered in determining the value of property taken in a condemnation proceeding (*Department of Public Works & Buildings v. Rogers* (1968), 39 Ill. 2d 109, 113, 233 N.E.2d 409), and where there is sufficient evidence for a court to make a finding that the reasonable probability exists, then the witnesses may testify as to the value of the land based upon such probability. *Department of Public Works*

*& Buildings v. Association of Franciscan Fathers* (1977), 69 Ill. 2d 308, 314-15, 371 N.E.2d 616.

The pivotal question presented by the property owner's argument is whether the record contains sufficient evidence of the reasonable probability of rezoning to support DeClark's valuation of the remainder.

The factors which establish the reasonable probability of a zoning variation include the rezoning of nearby property, growth patterns, change of use patterns and character of neighborhood demands within the area for certain types of land use, sales of related or similar properties at prices reflecting anticipated rezoning, physical characteristics of the subject and of nearby properties, and under certain circumstances, the age of the zoning ordinance. *Forest Preserve District v. South Holland Trust & Savings Bank* (1976), 38 Ill. App. 3d 873, 876-77, 349 N.E.2d 689.

■ The evidence presented indicated that the subject property had in the past been physically well suited to restaurant usage and had benefited from appropriate utility service and a demand for that use. Yet, none of this evidence was presented in such a way as to convey to the court or to the jury that there was a reasonable probability of rezoning. More importantly, there was no evidence that the village had ever granted zoning variations which effectively waived the building and parking setback requirements for nearby properties. In addition, there was no evidence that the village had adopted what could be considered a flexible approach to zoning issues of this type. (See *Association of Franciscan Fathers*, 69 Ill. 2d at 315.) Consequently, there was insufficient evidence to establish the reasonable probability of rezoning.

Moreover, the record indicates that DeClark testified that he had conversations with two people "at the Village of Schaumburg [who] indicated that [the village] would not press the setback requirements. They would waive them, in essence." Counsel for the property owner immediately raised an objection which was sustained following argument outside the presence of the jury. Thereafter, the court struck from the record any statements as to conversations with persons from the Village of Schaumburg and instructed the jury to disregard DeClark's testimony in this regard. On redirect examination, however, counsel for the State resumed this line of questioning and elicited testimony that DeClark was "familiar with prior condemnation *** [actions] where there [had been] intragovernmental cooperation regarding setbacks or *** variances of *** zone ordinances" and that DeClark "used that experience in [forming his] opinion [of] value in this case." Counsel for the State then inquired

whether DeClark had considered "what the government of Schaumburg would or would not enforce as far as the State's acquisition of property in this case." An objection by the property owner's counsel was overruled, and DeClark was permitted to answer this question in the affirmative.

It was improper to admit DeClark's vague references to "intragovernmental cooperation" where there was no evidence that such an agreement actually existed between the State and the Village of Schaumburg. The jury's verdict of only $12,500 for damage to the remainder reflects that it was persuaded by DeClark's assumption that the zoning ordinance would not be enforced by the village. (See *Gibbel*, 65 Ill. App. 3d at 894; *Department of Transportation v. Jones* (1976), 44 Ill. App. 3d 592, 597, 358 N.E.2d 402.) Therefore, it was error for the jury to consider DeClark's valuation of the remainder which was predicated, in part, upon his belief that the building and parking setback requirements would be waived.

In addition, we conclude that there is no merit to the State's claim that the questions posed by counsel for the property owner during cross-examination of DeClark "invited" the improper testimony by that witness on redirect examination. The record reveals that during cross-examination of DeClark, counsel for the property owner inquired as to the number of parking spaces that would be lost "if the setback is enforced." This question merely assumes that the existing zoning ordinance would be enforced and seeks to determine how many parking spaces would be sacrificed by the taking of the property for roadway improvements. Thus, the inquiry cannot be said to have "invited" or "opened the door" to improper testimony as to an intragovernmental agreement regarding the waiver of setback requirements.

The State also argues that this error was waived where the expert witnesses called by the property owner also assumed that there was a reasonable probability of rezoning. This argument is not supported by the record.

Tadrowski specifically stated that after the acquisition, the restaurant would be a nonconforming use and that unless a zoning variance was granted, the village could require that the building be demolished. Tadrowski stated further that at least two additional parking spaces would have to be sacrificed in order to comply with the 10-foot parking setback requirement. Tadrowski testified that although he was aware of prior cases involving intragovernmental cooperation, he believed the Village of Schaumburg would not grant a variance for the required parking setback because he found that no such variance had been granted for any other properties on Golf

Road, along which the subject restaurant was located. In addition, Tadrowski testified that, absent demolition of the restaurant building, the property owner would not be able to correct the problem of noncompliance with the 28-foot building setback requirement, and the value of the remainder of the property would be greatly decreased by this fact.

Zaharias testified that he believed that the village would enforce its zoning ordinance, and he allocated damages to the remainder as a result. Zaharias stated that because of the loss of parking spaces, the building's proximity to the street, and due to the property owner's inability to comply with the setback requirements, the highest and best use of the property would be changed from a restaurant to general retail.

Examination of the testimony of these witnesses indicates, therefore, that both of the property owner's experts believed that the existing zoning ordinance would be enforced and that the building would have to be demolished if a variance could not be obtained. Both of these experts allocated a significant amount of damages to the remainder based upon the fact that the property owner would be unable to comply with the mandated building setback and would be forced to lose at least two parking spaces in order to comply with the parking setback requirement. This evidence is in sharp contrast to the testimony given by DeClark, the State's expert. DeClark assumed that the village would not enforce its zoning ordinance and allocated no damages to the remainder as a result of the property owner's inability to comply with that ordinance.

The record in the case at bar lacks sufficient evidence to support the consideration of a reasonable probability of rezoning, and the jury should not have been permitted to consider DeClark's testimony as to the value of the remainder which assumed that rezoning was likely.

## III

Finally, the property owner contends that the attorney for the State[2] engaged in prejudicial and improper conduct which deprived him of the right to a fair trial.

Specifically, it is alleged that counsel for the State ignored the evidentiary requirements in condemnation actions and repeatedly introduced evidence which was inadmissible in eminent domain cases. In addition, the property owner asserts that questions posed by trial

---

[2]These allegations concern only the trial counsel for the State. The State is represented by different attorneys on appeal.

counsel for the State and comments made by him during closing argument attacked the heritage and ancestry of the property owner and were intended to influence the verdict of the jury

The record indicates that trial counsel for the State elicited improper valuation testimony from DeClark, including costs to cure and the separate valuation of land and improvements; failed to present sufficient evidence of the probability of rezoning despite the fact that DeClark's opinion of the value of the remainder depended upon a zoning variation; implied that the property owner would be able to compensate for the lost parking spaces by parking cars on other property; argued that after the acquisition the restaurant would be a legal, nonconforming use when it would actually be an illegal use; argued that before the acquisition the restaurant was an illegal use when it was actually a legal, nonconforming use; introduced evidence which implied that the village would waive the requirements of the zoning ordinance, but failed to introduce any evidence that the village had officially agreed to do so; referred to possible "intragovernmental cooperation," but never presented any evidence that an actual agreement had been reached between the State and the village; indicated during opening statement that he would present evidence of the reason for the roadway improvements, but stated outside the presence of the jury that he had no intention of presenting such evidence; and attempted to introduce the results of a "noise study" conducted by an expert that he did not intend to call as a witness.

The record also indicates that the very first question posed on cross-examination of Zaharias referred to his Greek ancestry. Trial counsel for the State then questioned Zaharias as to the nature of his relationship with the owner of the property, who was also of Greek ancestry. During closing argument, trial counsel for the State made the following comments to the jury:

> "If you look at your numbers, *** you'll find that Mr. Zaharias has the highest number in the before as a value of the whole, and he had the lowest number in the after. *** He's a broker, *** let's take care of my client. Least of all, a Greek client. Mr. Zaharias is Greek born, Greek ancestry, and [the property owner], *** Greek born, Greek ancestry.
>
> You heard Mr. Zaharias say yesterday that he was called by the owner at his home and he had his name checked out with a couple of other Greek names. Do you think there's some bias there? Don't you think Mr. Zaharias is taking care of business for [the property owner]?
>
> * * *
>
> Zaharias hired in December, *** and is called a couple of days

later at home by the owner. He had his name checked out with a couple of other Greek names. Do you see what's going on here?

* * *

I'm not trying to attack anyone's heritage, by the way. I'm not trying to do that. I have pride in my heritage, as I know you do, but you should be alerted to the fact that there might be something going on here. There just might be something going on here. You heard him say that [the property owner] had him checked out with some other Greek names. So was he only looking for a Greek broker to do this job for him a couple of months ago just before this trial."

■ A party is entitled to a fair trial, free from prejudicial conduct of counsel who undertakes to supply facts or to draw inferences not based upon the evidence in the record, and prejudice is not necessarily cured where the trial court has sustained objections to improper questioning. (*Mazurek v. Crossley Construction Co.* (1991), 220 Ill. App. 3d 416, 426, 581 N.E.2d 59; *Charpentier v. City of Chicago* (1986), 150 Ill. App. 3d 988, 998, 502 N.E.2d 385.) It is improper in closing argument to make reference to matters not in evidence or to comment upon evidence which has been excluded or stricken. *Mazurek*, 220 Ill. App. 3d at 427.

Despite the fact that the trial court sustained several objections to improper questions, the conduct of trial counsel for the State clearly affected the property owner's right to a fair trial and influenced the verdict of the jury (see *Schwedler v. Galvan* (1977), 46 Ill. App. 3d 630, 641-42, 360 N.E.2d 1324; *Bulleri v. Chicago Transit Authority* (1963), 41 Ill. App. 2d 95, 106-07, 190 N.E.2d 476), and the cumulative effect of this conduct requires reversal.

We conclude that based upon the improper conduct of counsel for the State and upon the improper valuation evidence presented by De-Clark, the jury's verdict cannot be sustained. Accordingly, we reverse the judgment entered on the verdict, and we remand the cause to the circuit court of Cook County for a new trial.

Reversed and remanded.

JIGANTI, P.J., and JOHNSON, J., concur.